570 So.2d 963 (1990)
Emmett H. MASSIE, Appellant,
v.
UNIVERSITY OF FLORIDA and Division of Risk Management, Appellees.
No. BN-98.
District Court of Appeal of Florida, First District.
June 29, 1990.
On Denial of Rehearing September 27, 1990.
*964 Terence J. Kann, Jacksonville, for appellant.
James E. Clayton, of Clayton, Johnston, Quincey & Ireland, Gainesville, for appellees.
PER CURIAM.
The original opinion in this cause was withdrawn on the court's own motion upon the vote of a majority of the active members of the court to consider the case en banc pursuant to rule 9.331, Florida Rules of Appellate Procedure. Upon consideration of the revised opinion set forth herein, a majority of the court voted to dissolve en banc.
Emmett Massie appeals a workers' compensation order denying his application for modification pursuant to section 440.28, Florida Statutes (1983). He contends that the deputy commissioner erred in ruling that he had not demonstrated either a change in condition or a mistake in a determination of fact entitling him to modification of the prior order denying compensability because the stress he was subjected to "was not to an extent greater than that to which the general public is exposed."
The material facts are not in dispute. In July 1979, when Massie began working for the University of Florida as head of the engineering department of the university television station, WUFT-TV, he had been diagnosed as having multiple sclerosis for several years, but this condition had remained essentially asymptomatic. After embarking on his employment at the university, claimant was regularly required to work overtime, often 10-12 hours per day, *965 and sometimes as much as 18 hours a day. He claims that his preexisting multiple sclerosis was aggravated and worsened because he was required to work unusually long hours and was subjected to unusually stressful pressures at work, specifying such things as high employee turnover rate, directions by the station manager to purchase equipment in violation of state law, conflicting job descriptions, relocation and rapid expansion of the station facilities, and an extended emergency caused by an airplane colliding with and destroying the station transmitting tower. His multiple sclerosis eventually worsened to the point that he could no longer function at work, and he was compelled to resign his position. Claimant then filed a claim for permanent total disability benefits (PTD), alleging that repeated exposure to the unusual mental and physical stresses and exceptionally long working hours associated with his employment aggravated his preexisting multiple sclerosis.
After an evidentiary hearing, the deputy commissioner issued an order in February 1984 denying the claim for PTD, stating in part that the testimony:
indicates that stress can accelerate or exacerbate multiple sclerosis, however, I find that the stress which the claimant testified to over a long period of time was not to an extent greater than that to which the general public is exposed, was not an exposure peculiar to and constituting a hazard of his employment operating upon the physical condition of the claimant.
(R. 407). The deputy commissioner further stated that an award of benefits based on job pressure and stress as claimed in this case would be against the philosophy of the Workers' Compensation Act because:
job pressure and long hours of work in and of itself have never been held to be factors which result in entitlements under the Workers' Compensation Act. Indeed, if job pressure and stress were compensable, there would be no end to compensable claims under the Act, as in today's world, all gainful activities are subject to the disease!
(R. 407). On this basis, the deputy commissioner ruled that claimant "has not suffered a compensable accident and that his permanent total disability is not covered under the Workers' Compensation Act." The order made no explicit reference to claimant's expert witness, Alan Pappas.[1]
*966 The deputy commissioner's order was affirmed on appeal in Massie v. University of Florida, 463 So.2d 383 (Fla. 1st DCA), pet. for rev. denied, 472 So.2d 1181 (Fla. 1985), upon the reasoning that Massie's evidence showed that the stress to which he was exposed was not a "hazard greater than that to which the general public is exposed." Id. at 384. This conclusion was premised primarily on certain testimony of claimant's expert witness, Alan Pappas:
Massie's job placement expert [Pappas] stated that stress was "inherent in technical areas" and that "stress at work causes everyone to have difficulties." He further stated that "stress on the job is not unusual," and that for engineers "stress was part of the normal responsibility" of the job. Massie offers no evidence to the contrary, saying only that the job stress at the University of Florida was greater than he ever had in a job. This contention does not support a finding that the stress was greater than the general public had in jobs, especially when considering that Massie came to the University from a sheltered work environment where "8 to 5" hours were strictly observed.
* * * However, because there was expert testimony that Massie's stress was not "unusual" and that job stress causes "everyone" to have difficulty, we must hold that the deputy's holding was supported by competent substantial evidence.

*967 463 So.2d at 384 (emphasis added). This court denied Massie's motion for rehearing, and the supreme court denied review, 472 So.2d 1181 (Fla. 1985).
On August 19, 1985, claimant timely filed an application for modification of the February 1984 order pursuant to section 440.28, which authorizes modification "on the ground of a change in condition or because of a mistake in a determination of fact." Claimant alleged that there had been a change in his condition and, alternatively, that the deputy commissioner and this court had made a mistake in a determination of the essential facts upon which the prior order was based. An evidentiary hearing on this application was held on March 24, 1986, at which claimant's job stress expert, Alan Pappas, testified that the deputy commissioner and this court had misinterpreted his testimony regarding whether the level of stress experienced by Massie in his job at WUFT-TV was excessive and unusual. Pappas explained that certain statements from his prior testimony had been misquoted, misconstrued, or taken out of context, especially in the appellate court's opinion, and he testified that he never stated nor intended to express the opinion that Massie's stress at his job was not unusual. He explained that the stress experienced by claimant was so unusual and excessive that he would rate it, on a scale of 1 to 10, as 8 or 9. Claimant's counsel then argued to the deputy commissioner that the previous order had been based on erroneous findings of fact regarding the stress issue, stating, "[claimant] had a pressure packed stressful job. Everybody that came here told the Court he did, yet the findings in the Court order were that it wasn't" (R. 439). The deputy commissioner responded, "I just don't think that the situation fits the, uh, philosophy of Workers' Compensation" (R. 439). When the claimant pointed out there was no support for the deputy commissioner's finding that the stress claimant experienced was not to "a greater extent than that which the general public is exposed," the deputy commissioner stated, "I know there's no support for it, but that's what I found" (R. 439). In the order issued April 30, 1986, the deputy commissioner ruled that "the claimant has not demonstrated that there is any new fact or change in condition, that there was no mistake of fact, that therefore the claimant is not entitled to a modification of the prior Order," and that "the filing of this second claim for benefits ... merely sought a redetermination of facts already litigated." (R. 464).
Claimant's first argument on appeal, that the deputy commissioner erred in failing to find a change of condition had occurred, is without merit. In an effort to prove that the aggravation of his multiple sclerosis was due to employment-related stress, claimant testified at the modification hearing that his condition had stabilized and not worsened significantly since he left his employment, thereby suggesting that relief of the job-related stress had caused his condition to enter what might be characterized as a state of remission. But claimant admitted that his condition had not changed materially since the previous hearing, i.e., that his condition had already stabilized at the time the first order was entered. Claimant's testimony, while potentially relevant to the claimed mistake of fact, does not prove a change in condition sufficient to require modification of the prior order. Hall v. City of Jacksonville, 443 So.2d 326 (Fla. 1st DCA 1983).
Claimant's contention that he sufficiently proved a mistake in a determination of fact that required modification is more difficult to resolve. The deputy commissioner, in his February 1984 order, found that claimant was permanently and totally disabled due to the effects of multiple sclerosis, and that stress can aggravate or accelerate this disease. Although the deputy commissioner stated in that order that "the stress which the claimant testified to over a long period of time was not to an extent greater than that to which the general public is exposed" (R. 407), the order makes no reference to the testimony of plaintiff's expert witness Pappas; the quoted statement was apparently based on the deputy commissioner's belief that periods of extraordinary stress are normal in everyday life, and that the level of stress *968 described by claimant cannot, as a matter of law, serve as the legal basis for a workers' compensation claim. Yet it is abundantly clear that there is no evidence in the record to support that statement of fact. This is confirmed by the deputy commissioner's comments during the modification hearing, especially his statement that he was aware his conclusion that claimant's stress is no greater than that to which the general public is exposed has no evidentiary support.[2] It is apparent that the deputy commissioner denied modification for a mistake in the determination of fact based on his belief that his previous ruling, having been affirmed by this court, was binding on him and could not be relitigated under section 440.28.
In reviewing the original order on appeal, this court's opinion cited Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA) pet. for rev. denied, 388 So.2d 1119 (Fla. 1980), for the rule of law that a showing of unusual and excessive stress as a result of repeated exposure to employment conditions which aggravate a pre-existing condition can give rise to a compensable accident under chapter 440 provided it is shown that the claimant has been subjected to (1) prolonged exposure, (2) the cumulative effect of which is injury or the aggravation of a preexisting condition, and that (3) the claimant is subject to a hazard greater than the general public. It was noted that medical testimony in the record tended to establish the element of causation between the aggravation of the preexisting multiple sclerosis and the claimed physical strain and emotional stress. Regarding whether the third element had been proven, which was considered to be the critical question on appeal, the opinion referred to testimony in the record relating to claimant's stressful episodes and construed certain statements from the testimony of claimant's expert witness Pappas (quoted supra) as supporting the finding of fact by the deputy commissioner. The opinion did not approve the deputy commissioner's view of the law that physical strain and emotional stress of the type alleged by the claimant was simply an inherent part of every job and could not serve as a legal basis for compensability. Rather, the decision was based on the court's reading of the expert's testimony that, as a matter of fact, the claimant's job did not expose him to any unusual and excessive occurrences of physical and emotional stress greater than that to which the general public is normally subjected.[3]
At the modification hearing Pappas did not change his testimony from that given at the first hearing. Rather, Pappas explained in detail how the court, as well as the deputy commissioner, had misconstrued and misunderstood what he said at the first hearing and had made a mistake in the determination of fact in treating his original testimony as supporting the deputy commissioner's finding regarding claimant's level of stress in relation to the general public. It is apparent that on both occasions Pappas explained that while broadcast station engineers holding jobs similar to claimant's are expected to work under some level of stress, the stresses imposed on claimant by the events described were, as a matter of fact, unusual, excessive, out of the ordinary, and not within claimant's control.
This court's prior opinion confirms that an employee may predicate a compensable claim for benefits on the aggravation of a preexisting condition of multiple sclerosis due to unusual and excessive stress and strain in his employment, whether these stresses occur over a prolonged period of time or as the result of a single identifiable episode, provided such stress and strain and the resulting aggravation are shown to be related to the employee's work. 463 So.2d at 384. See also State *969 Accident Insurance Fund Corp. v. Carter, 73 Or. App. 416, 698 P.2d 1037 (1985). The aggravation of claimant's multiple sclerosis by his prolonged exposure in his employment to a combination of emotional and physical stress and strain attributable to unusual circumstances and exceptionally long hours of work may be compensable so long as the exposure to stress and strain is greater than that to which the general public is exposed.[4]
It is now abundantly clear that based on the testimony of claimant's expert, Pappas, the deputy commissioner could find that the stress and physical exertion to which claimant had been exposed in his employment with WUFT-TV was indeed greater than that to which either the general public was exposed or other station engineers in similar employment were generally exposed. There was no contradictory evidence, and the record contained no competent substantial evidence to support the deputy commissioner's contrary finding. Because the expert's testimony was misconstrued by this court, however, the erroneous decision in affirming the deputy commissioner's order established the "law of the case." We must address, therefore, whether the modification provisions in section 440.28 are available to correct a mistake of fact such as this (the absence of any evidence to support the finding of fact), and whether the correction can be made by the deputy commissioner or must be made by this court.
Were we now writing on a clean slate, we would not hesitate to reverse with a short opinion and remand for further consideration of claimant's application for modification pursuant to section 440.28 in light of Pappas's clarification of his original testimony, because this would serve to avoid a manifest injustice and result in a decision based on an accurate as opposed to a mistaken determination of the facts. However, a number of appellate court decisions construing and applying the mistake of fact provision in section 440.28 appear to give some support to the deputy commissioner's ruling to deny modification under that section. Therefore, we first focus upon the meaning of the statutory language in section 440.28 and whether such decisions preclude the application of that section in the circumstances of this case.
The worker's compensation act as originally enacted permitted modification of awards that had become final only "on the ground of a change in condition." Ch. 17481, § 28, Laws of Fla. (1935). In 1941 this section was amended to provide for modification both for change of condition or "because of a mistake in a determination of fact." Ch. 20672, Laws of Fla. (1941). The original one-year time limitation was changed to two years in 1953. Ch. 28241, Laws of Fla. (1953). Since 1953 the modification provision has remained substantially intact in section 440.28, with only minor modifications not relevant to this discussion.
The modification provision in the Florida statute is patterned after and in identical language to the modification provision in the federal Longshore and Harborworkers' Compensation Act, 33 U.S.C. § 921. See Stansfield v. Lykes Bros. S.S. Co., Inc., 124 F.2d 999, 1000 n. 1 (5th Cir.1941). Consequently, many of the earlier Florida court decisions looked to federal cases construing that longshoreman's act provision for assistance in determining the statutory meaning. E.g., Sauder v. Coast Cities Coaches, Inc., 156 So.2d 162 (Fla. 1963); Beaty v. M & S Maintenance Co., 124 So.2d 868 (Fla. 1960); Power v. Joseph G. Moretti, Inc., 120 So.2d 443 (Fla. 1960); McDonough v. Versailles Hotel, 57 So.2d 16 (Fla. 1952); Hall v. Seaboard Maritime Corp., 104 So.2d 384 (Fla. 1st DCA 1958).[5] *970 In Stansfield v. Lykes Bros. S.S. Co., Inc., one of the federal cases frequently cited by the Florida courts, the Fifth Circuit upheld a finding of mistake by the deputy commissioner and observed:
While we think it plain therefore, that new evidence may be fairly introduced in a proceeding to re-open on the ground of a mistake in the determination of a fact, and that this new evidence need not be "newly discovered", we think it equally plain that the statute means something more than that the commissioner may change his mind whenever he pleases, and either on the same evidence or on new evidence, without a showing that there was a mistake in a determination of fact, make a new award. The general right to make a new award which is allowed under the terms of some statutes is one thing, and the right to make a new award on the limited grounds set out in the Federal statutes is quite another. Under the Federal statutes, a re-award may not be made unless there is evidence reasonably supporting the finding, on which the new award must rest ... of a mistake in the determination of a fact by the commissioner. [Emphasis added.]
124 F.2d at 1004. The federal district court and the circuit court of appeals decisions have tended for the most part to give the statutory language a restrictive construction in the pursuit of "finality" and most often have denied modification.
The experience in the Florida courts has been similar. In Power v. Joseph G. Moretti, Inc., 120 So.2d 443 (Fla. 1960), which denied modification for mistake of fact based on additional medical testimony, the Florida Supreme Court explained:
It is well established that in order to justify the modification of a compensation order on the basis of a mistake, the subsequent showing must consist of something more than additional evidence of facts already known, an accumulation of testimony on facts previously established, a mere change of mind by a witness, or a reanalysis of the prior record by the deputy and a change of his conclusions as a result of a retrospective exploration of the original record. [Emphasis added.]
120 So.2d at 446. After citing a number of federal decisions in support of these statements, the court also observed:
Admittedly, the problem of delineating just exactly what constitutes a "mistake in a determination of fact" is fraught with considerable difficulty. The expression is in a measure almost beyond definitive description. We think however, that the foregoing authorities, by a process of exclusion and inclusion, rather satisfactorily demonstrate the outer limits of those situations which can be correctly categorized as a mistake in a determination of fact within the contemplation of the subject statute.
120 So.2d at 446-47.
The difficulties so described by the supreme court have persisted over the years. Our research reveals that only two Florida Supreme Court decisions have approved modification of final orders based on a mistake in a determination of fact. Hughes v. Denny's Restaurant, 328 So.2d 830 (Fla. 1976); Orme v. M.R. Harrison Construction Co., 127 So.2d 104 (Fla. 1961). Only one district court of appeal decision that we have found has approved modification for "a mistake in a determination of fact," and in that case it was shown by the employer that claimant obtained the compensation order by fraud and misrepresentation. Oakdell, Inc. v. Gallardo, 505 So.2d 672 (Fla. 1st DCA 1987). In all other appellate decisions the Florida courts have continued to struggle to give some meaning and purpose to the statutory language, but have always applied it in keeping with the judicial system's traditional quest for finality of decision so as to deny modification based on a mistake in a determination of fact. Steele v. A.D.H. Building Contractors, Inc., 174 So.2d 16 (Fla. 1965); Dixon v. Bruce Construction Corp., 160 So.2d 116 (Fla. 1963); Sauder v. Coast Cities Coaches, Inc., 156 So.2d 162 (Fla. 1963); Beaty v. M & S Maintenance Co., 124 So.2d 868 *971 (Fla. 1960); Power v. Joseph G. Moretti, Inc., 120 So.2d 443 (Fla. 1960); McDonough v. Versailles Hotel, 57 So.2d 16 (Fla. 1952); Westwinds Transportation, Inc. v. Murphy, 494 So.2d 519 (Fla. 1st DCA 1986); Hohenstein v. Jim Wilson Const. Co., 451 So.2d 964 (Fla. 1st DCA 1984); Ouellette v. Treasure Isle, Inc., 444 So.2d 585 (Fla. 1st DCA 1984); City of St. Augustine v. Allen, 424 So.2d 939 (Fla. 1st DCA 1983); Everwear Products Co. v. Holloway, 422 So.2d 1020 (Fla. 1st DCA 1982); Housing By Vogue v. Caswell, 421 So.2d 556 (Fla. 1st DCA 1982); Southern Bell Telephone & Telegraph Co. v. Blackstock, 419 So.2d 360 (Fla. 1st DCA 1982); Cleveland v. Everson, 415 So.2d 763 (Fla. 1st DCA 1982); University Inns v. Davis, 413 So.2d 128 (Fla. 1st DCA 1982); Universal Erectors, Inc. v. Murphy, 410 So.2d 209 (Fla. 1st DCA 1982); McKenney v. School Board of Palm Beach County, 408 So.2d 655 (Fla. 1st DCA 1981); City of West Palm Beach v. Chisolm, 405 So.2d 279 (Fla. 1st DCA 1981); Heter v. Buning The Florist, 396 So.2d 1201 (Fla. 1st DCA 1981); City of Vero Beach v. Thomas, 388 So.2d 1374 (Fla. 1st DCA 1980); Housing By Vogue v. Hendon, 386 So.2d 884 (Fla. 1st DCA 1980); Sheets v. City of Miami, 111 So.2d 690 (Fla. 3d DCA 1959); Nix v. Merrill-Stevens Dry Dock & Repair Co., 107 So.2d 616 (Fla. 1st DCA 1958), cert. denied, 109 So.2d 573 (Fla. 1959); Hall v. Seaboard Maritime Corp., 104 So.2d 384 (Fla. 1st DCA 1958). For example, in Universal Erectors this court said:
The statutory provision for modification based on change of condition or mistake of fact provides an exception to the doctrine of res judicata. The purpose of modification is to provide a remedy for the parties where the condition of the claimant has changed or where the prior order entered by the judge was based upon a mistake in a determination of fact. Modification is not a method of relitigating issues which have previously been determined... . It is well established that cumulative evidence which merely controverts or supports evidence taken at the original hearing is not sufficient as a basis for modification. [Emphasis added.]
410 So.2d at 210-11 (citations omitted). The court held that the claimant had failed to establish a mistake of fact because, "at most, it appears that the facts presented to the judge of industrial claims at the original hearing were incomplete" or that "the deputy commissioner changed his mind as to the sufficiency of the evidence originally presented to him" which "of course, is not a basis for modification." 410 So.2d at 211.
When the Supreme Court of the United States eventually considered the statutory language in the Federal Longshoremen's Act, however, the Court took note of the informality in such compensation proceedings and rejected the court-created limitations on modification predicated on the "finality of decision" approach. The Court held that nothing in the statutory language or the legislative history of the act indicated any intention to limit the basis upon which a party could obtain modification for a mistake in a determination of fact so long as the modification petition was filed within the statutory time limitation. Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30, rehearing denied, 391 U.S. 929, 88 S.Ct. 1800, 20 L.Ed.2d 671 (1968). Shortly thereafter, in O'Keeffe v. Aerojet-General Shipyards, Inc., 404 U.S. 254, 92 S.Ct. 405, 30 L.Ed.2d 424 (1971), rehearing denied, 404 U.S. 1053, 92 S.Ct. 702, 30 L.Ed.2d 742 (1972), the court further clarified the intent of the statutes. In that case, the deputy commissioner had initially rejected an employee's claim on grounds that the proofs failed to establish his disability was related to conditions of his employment. Thereafter, the employee "reopened the case" by timely filing a petition, pursuant to section 22 of the act, seeking modification based on a mistake in the determination of that fact. The deputy commissioner heard further evidence from the petitioner tending to prove his disability was related to the conditions of his employment and granted modification. This order was affirmed by the federal district court but reversed by the Fifth Circuit. The Supreme Court disapproved *972 the Fifth Circuit's decision and reinstated the deputy commissioner's order, holding:
Thus, on its face, the section [§ 22] permits a reopening within one year "because of a mistake in a determination of fact." There is no limitation to particular factual errors, or to cases involving new evidence or changed circumstances. The Act at one time did authorize reopening only on the "ground of a change in conditions," 44 Stat. 1437, but was amended in 1934 expressly to "broaden the grounds on which a deputy commissioner can modify an award ... when changed conditions or a mistake in a determination of fact makes such modification desirable in order to render justice under the act." S.Rep No. 588, 73d Cong, 2d Sess, 3-4 (1934): HR Rep No 1244, 73d Cong, 2d Sess 4 (1934). The plain import of this amendment was to vest a deputy commissioner with a broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted.

Nor does our construction "render meaningless the provision [of § 21 of the Act, 33 U.S.C. § 921] that [a compensation] order becomes final unless proceedings for review are brought within thirty days." Case v. Calbeck, 304 F.2d 198, 201 (CA5 1962). The review authorized by § 21 is limited to the legal validity of the award; a district court may set aside an award only if it is "not in accordance with law." Section 21(b), 33 U.S.C. § 921(b). The 30-day limit of § 21 is not "rendered meaningless" by setting a different time limit for a redetermination of fact. Moreover, the absence of a provision in § 21 for the judicial review of evidence confirms the need for a broad discretion in the deputy commissioner, to review factual errors in an effort "to render justice under the act."
404 U.S. at 255-56, 92 S.Ct. at 406-07. Accordingly, despite the strict limitations on modification for mistake of fact that had been repeatedly imposed by lower federal courts for many years (and which were consistent with the limitations imposed by Florida courts under section 440.28), the Supreme Court gave the statutory language a literal but broad interpretation to permit modification upon demonstration of a mistake in a determination of fact without limitation on the manner of proof of the mistake or the scope of reconsideration by the deputy commissioner because the primary purpose is to "render justice under the act."
The case now before us would be a simple one to decide had the Florida courts followed the same straightforward, simplistic approach and construction of the statutory language as did the United States Supreme Court, instead of writing such extensive limitations into the statutory language predicated on traditional notions of res judicata and judicial opposition to opening final decisions for relitigation that almost no basis for modification for a mistake of fact could survive.[6] Were we to place the same construction on the parallel language in the Florida Workers' Compensation Act as that given the Longshoremen's Act by the U.S. Supreme Court, that construction would be consistent with the long-standing rule of statutory construction recognizing that if a Florida statute is modeled after a federal law on the same subject the Florida statute will be given the same construction in the Florida courts as its prototype has been given in the federal courts to the extent such construction is harmonious with the spirit and policy of the *973 Florida legislation on the subject. Kidd v. City of Jacksonville, 97 Fla. 297, 120 So. 556 (1929). An interpretation of the mistake of fact language in section 440.28 which accords to deputy commissioners a "broad discretion" similar to that accorded under the Longshoreman's Act by the U.S. Supreme Court to correct mistakes of fact earlier made in compensation orders is more in accord with the purpose of the Workers' Compensation act, which is remedial legislation ordinarily to be liberally construed to effectuate the purposes for which the law was enacted. Gillespie v. Anderson, 123 So.2d 458 (Fla. 1960). As is true of the federal statute, nothing in the history of the Florida amendment adding the mistake of fact language and nothing in the statute itself remotely suggests a legislative purpose to drastically limit its application to enforce finality of decision. The plain language of section 440.28, on its face, simply does not appear to be susceptible to an interpretation requiring principles of finality to prevail over a conceded mistake of fact, and clearly the United States Supreme Court's construction of the statutory language would permit the modification sought in this case to assure that justice is done. But the Florida supreme court has not had occasion to revisit this statute and consider the Supreme Court's interpretation of the statutory language, so we are compelled to decide this case within the confines of the existing Florida decisions.
A careful reading of the Florida decisions on modification for mistake in a determination of fact leaves one in considerable doubt as to what the statutory language really means, and how one can ever obtain modification for mistake of fact. The decisions state that section 440.28 cannot be used to obtain modification by (a) relitigating the issue "solely upon an increase in the quantum and probative force of the evidence," Southern Bell, 419 So.2d at 362, (b) relying on "cumulative evidence which merely controverts or supports evidence taken at the original hearing," Universal Erectors, 410 So.2d at 210-11, or (c) considering "additional evidence of facts already known, an accumulation of testimony on facts previously established, a mere change of mind by a witness, or a reanalysis of the prior record by the deputy and a change of his conclusions as a result of a retrospective exploration of the original record," Power v. Joseph G. Moretti, Inc., 120 So.2d at 446. In short, the cases appear to focus on denying modification because of a change of mind by the trier of fact and relitigation of the same facts. Yet none of the decisions reviewed have presented the precise situation involved in this case, that is, where the deputy commissioner conceded a total lack of competent substantial evidence in the record to support his findings of fact leading to a denial of compensability. If, therefore, there is any statutory basis at all for modifying a final order for a mistake in a determination of fact under section 440.28, most assuredly it must exist when, upon consideration of a timely motion for modification, the moving party demonstrates and the deputy commissioner concedes the complete absence of competent evidence to support the alleged mistake of fact. Accordingly, we hold that the deputy commissioner had the authority, and indeed the duty on this record, to recognize his mistake in a determination of fact and to consider the modification sought by appellant. Since the prior decisions on modification have not involved this unusual circumstance, they are distinguishable.
That brings us to the legal effect of this court's prior decision affirming the deputy commissioner's original order on the court's conclusion that the record evidence supported the deputy's findings of fact. This court's decision became the law of the case, thus raising some question as to whether the deputy commissioner had any authority to subsequently modify that decision pursuant to section 440.28. We conclude that the deputy did have such authority upon a showing of mistake in the determination of a fact because, as the Florida Supreme Court has held, the modification statute creates an exception to traditional notions of finality based on "the doctrines of `res judicata,' `law of the case' or `estoppel by judgment'" such that those *974 doctrines are not applicable in workers' compensation cases when the statutory grounds for modification are met. Hughes v. Denny's Restaurant, 328 So.2d 830, 838 (Fla. 1976). See also Ronald Allen Trucking v. Helton, 483 So.2d 840, 841 (Fla. 1st DCA 1986).
Alternatively, even if it be supposed that the deputy commissioner did not have authority to render a decision contrary to this court's affirmance of the original order, see Brunner Enterprises, Inc. v. Department of Revenue, 452 So.2d 550, 552 (Fla. 1984), there is ample precedent for this court to correct its own mistake of law and fact to avoid manifest injustice. Appellate courts have inherent power to correct their own errors when necessary to avoid a manifest injustice. In Strazzulla v. Hendrick, 177 So.2d 1 (Fla. 1965), the supreme court settled the dispute deriving from its decisions in Family Loan Co. v. Smetal, 123 Fla. 900, 169 So. 48 (1936) (holding that the court was without authority to review or reverse what it had previously decided as the law of the case), and Beverly Beach Properties, Inc. v. Nelson, 68 So.2d 604 (Fla. 1953), cert. denied, 348 U.S. 816, 75 S.Ct. 27, 99 L.Ed. 643 (1954) (suggesting otherwise), and held, as an exception to the "law of the case" doctrine, that an appellate court has inherent power to correct its own prior erroneous decisions to prevent manifest injustice. The supreme court stated:
In the McGregor case [McGregor v. Provident Trust Co. of Philadelphia, 1935, 119 Fla. 718, 162 So. 323] the court discussed at length the three principles of law  law of the case, res judicata and stare decisis  which are adhered to by this court and courts of other jurisdictions in order to lend stability to judicial decisions and the jurisprudence of the state, as well as to avoid "piecemeal" appeals and to bring litigation to an end as expeditiously as possible. Respecting the doctrine of "law of the case", it was said:
"By `law of the case' is meant the principle that the questions of law decided on appeal to a court of ultimate resort must govern the case in the same court and trial court, through all subsequent stages of the proceedings, and will seldom be reconsidered or reversed, even though they appear to have been erroneous." (Emphasis added.)
This particular statement made in the McGregor opinion  which clearly implies authority to reconsider and reverse  has been quoted in the following cases: [citations omitted]... .
* * *
The Beverly Beach Properties decision, as well as the McGregor and similar decisions, are, however, consistent with our decisions respecting the doctrine of res judicata and stare decisis [citation omitted], and with what appears to be the trend in other courts to recognize that the administration of justice requires some flexibility in the rule. [Citations omitted.]
* * *
We think it should be made clear, however, that an appellate court should reconsider a point of law previously decided on a former appeal only as a matter of grace, and not as a matter of right; and that an exception to the general rule binding the parties to "the law of the case" at the retrial and at all subsequent proceedings should not be made except in unusual circumstances and for the most cogent reasons  and always, of course, only where "manifest injustice" will result from a strict and rigid adherence to the rule.
177 So.2d at 3-4. A number of Florida decisions have applied this exception in diverse contexts. See, e.g., Harris v. P.S. Mortgage and Investment Corp., 558 So.2d 430 (Fla. 3d DCA 1990); Brunner Enterprises, Inc. v. Department of Revenue, 452 So.2d 550 (Fla. 1984); Preston v. State, 444 So.2d 939 (Fla. 1984); General Accident Insurance Co. v. Packal, 512 So.2d 344 (Fla. 4th DCA 1987); Harris v. Lewis State Bank, 482 So.2d 1378 (Fla. 1st DCA 1986); 3-M Electric Corporation v. Vigoa, 443 So.2d 111 (Fla. 3d DCA 1983), rev. denied, 447 So.2d 888 (Fla. 1984). This *975 principle has been applied even though the prior decision of the tribunal became final after appeal. See e.g. Harris v. Lewis State Bank; 3-M Electric Corporation v. Vigoa.
In Harris v. Lewis State Bank, cited above, this court, in an opinion reported at 436 So.2d 338, had affirmed in part and reversed in part a summary judgment entered in favor of the defendant bank. One of the counts in the complaint that was summarily disposed of and affirmed on appeal had alleged a theory of liability against the defendant bank based upon malicious prosecution. In that first appeal, this court held that the evidence in support thereof was too tenuous ever to reach the level of legal causation and malice required in a malicious prosecution action. However, this court reversed the lower court's order granting summary judgment on the count alleging false imprisonment and remanded for further consistent proceedings. Thus, the case proceeded on other causes of action. On remand, the trial court granted a motion to dismiss all counts of the complaint relating to the defendant bank, including the false imprisonment count. On appeal from that order, this court receded from its former decision affirming dismissal of the count alleging malicious prosecution and held that under the circumstances summary judgment on that cause of action was not appropriate and should not have been affirmed. In so doing this court made the following observations:
An appellate court's duty to administer justice under the law outweighs its duty to be consistent. While the law of the case will seldom be reconsidered or reversed, an exception to the general rule binding the parties to the law of the case may be made in unusual circumstances where manifest injustice will result from a strict and rigid adherence to the rule.... We are convinced that this court's ruling in Harris I affirming the summary judgment as to the malicious prosecution count was erroneous and will result in manifest injustice.
482 So.2d at 1383 [footnotes omitted].
In accordance with these principles, this court's duty in reviewing workers' compensation cases to administer justice under the law, outweighs its duty to follow an earlier decision of the court in the same case when, due to an error in reviewing the evidence, doing so will result in manifest injustice to a party. While this exception to the law of the case doctrine apparently has not previously been applied in workers' compensation proceedings, we do not view the judicial function in performing appellate review in such cases to be any different from that in other types of cases coming before the court.[7] The right to judicial review in this court is essential to the validity of the workers' compensation process under the constitutional right of access to court guaranteed by section 21 of the Declaration of Rights in Article I of the Florida Constitution. So this court's duty to accord justice to all parties is equally strong whether the appeal comes from a circuit court or from a deputy commissioner.
There is no doubt that this court, under these principles, may again consider its prior decision on this appeal. As already discussed, the deputy commissioner had jurisdiction to reconsider the issue here presented on the motion for modification pursuant to section 440.28. His order denying modification is clearly subject to appellate review in this court; there simply is no question that this court has the power to review that order. In performing that review, this court may look to any of its prior rulings in this case that control or affect the basis for the appealed order where necessary to avoid manifest injustice under the principles discussed above. The doctrines of res judicata and law of the case serve the court's objective of attaining finality in litigation and would normally preclude review of the issues affirmed on a prior appeal; but those doctrines are not *976 immutably binding so as to deprive this court of jurisdiction and power to reconsider its prior decision in a case again properly before it where necessary to avoid injustice.
This court is now confronted with a clear instance of manifest injustice apparent from the record of the original hearing before the deputy commissioner. The original order denying compensability was based on a finding of fact admittedly not supported by competent substantial evidence in the record. That order found the factual testimony offered by the claimant and his witnesses in support of the contention that his long hours of work (up to 18 hours a day), high employee turnover rate, directions to purchase equipment in violation of state law, conflicting job descriptions, relocation and rapid expansion of the station facilities, and the emergency caused by an airplane crash into the station transmitting tower was credible and unrebutted by the employer and servicing agent. The deputy commissioner has never rejected the expert testimony and opinion of Alan Pappas as being incredible or untrue. Neither the original order of February 1984 denying compensability nor the order denying modification explicitly refers to any facts supporting the deputy commissioner's general conclusion that the mental and physical stress and strain in claimant's job was not greater than that to which the general public is subjected. Rather, the deputy conceded at the modification hearing that the record contained no such evidence. Nor did either order contain any explicit finding that claimant's working 12 to 18 hours a day did not impose unusual physical exertion on claimant greater than that imposed on the general public, or that physical exertion due to these long hours, acting in concert with the mental stress shown by claimant's evidence, did not contribute to the aggravation of claimant's preexisting condition of multiple sclerosis. Only this court's appellate opinion explicates, by an incorrect reference to Pappas's testimony, factual support for the deputy commissioner's general conclusion that claimant was not subjected to unusual stress.
Ordinarily, it is not an appellate court's function to search the record for facts not explicitly found by the deputy commissioner in order to support the order. Foxworth v. Florida Industrial Commission, 86 So.2d 147 (Fla. 1955) (in no event should the court grope through the record to make findings of fact thereby doing the task which by statute and court decisions is solely that of the deputy commissioner). This court has repeatedly asserted that when an order fails to contain explicit findings of fact necessary to permit adequate appellate review of the basis for the decision below, the court should reverse and remand for further findings. See, e.g., Trujillo v. Southern Wine & Spirits, 525 So.2d 481 (Fla. 1st DCA 1988); Ellerbee v. Concorde Roofing Co., 461 So.2d 206 (Fla. 1st DCA 1984); Evans v. Orlando Work Force, 449 So.2d 992 (Fla. 1st DCA 1984); Orange County Board of County Commissioners v. Hanson, 400 So.2d 1045 (Fla. 1st DCA 1981); University of Florida v. Green, 395 So.2d 258 (Fla. 1st DCA 1981); Mobley v. Fulford Van & Storage, 390 So.2d 426 (Fla. 1st DCA 1980). The decision to affirm the original order in this case rather than remand for further findings of fact was based on a mistake in determining the facts due to this court's erroneous understanding of plaintiff's expert's testimony. Making that explicit finding of fact was a task that, under prior appellate decisions, should have been left to the deputy commissioner as the trier of fact. Upon review of the entire record, it is now manifest that this court's prior decision was in error and should not continue to control the parties and the deputy commissioner in subsequent proceedings in this case.
The facts presented by claimant in support of his claim and found credible by the deputy commissioner's first order are legally sufficient to support a finding of aggravation of the claimant's preexisting multiple sclerosis condition due to unusual and excessive physical and mental stress and strain. The deputy commissioner must be given an opportunity to rule explicitly on the credibility of the claimant's expert witness, Pappas, and to determine whether his *977 testimony does, in fact, support the factual conclusion that claimant's job exposed him to stress or strain greater than the general public under the standard discussed hereinabove.
Therefore, we hold that the deputy commissioner, being presented with a legally sufficient petition for modification pursuant to section 440.28 based on a complete absence of evidence to support the finding of fact in the prior order (which absence of evidence is now conceded by the deputy commissioner), erred in refusing to consider modification pursuant to section 440.28 for a mistake in the determination of fact because that section provides an exception to the doctrines of res judicata and law of the case based on the particular facts of this case. Additionally, we hold that this court's prior decision was predicated upon an erroneous factual premise which should not continue to control the rights of the parties because our error in so ruling on the first appeal has resulted in manifest injustice apparent on the face of this record and justifies the application of this exception to the law of the case doctrine. Harris v. Lewis State Bank, 482 So.2d 1378.
This cause is reversed and remanded for further proceedings consistent herewith.
REVERSED AND REMANDED.
SHIVERS, C.J., and ZEHMER, J., concur.
ERVIN, J., concurs with opinion.
ERVIN, Judge, concurring.
In concurring with the court's excellent opinion, I wish to reiterate the narrow extent of our decision. We simply hold that in cases in which there is a complete absence of any competent, substantial evidence in the record to support an earlier denial of a claim of compensability, the "mistake in a determination of fact" language provided in Section 440.28, Florida Statutes, requires the judge of compensation claims, once a timely motion for modification is filed, to order modification on such ground. Considering the limited breadth of our holding, I share the same sense of frustration evidenced by the majority's opinion: that notwithstanding the fact that the United States Supreme Court has placed a literal but broad construction on the parallel language in the federal Longshoreman's Act, after which the Florida statute was modeled, this court, although legislatively granted exclusive appellate review power over compensation orders, and given the right to recede en banc from its own decisions on the same point of law, is nonetheless without power to accord a similar construction to our own statute. This is because the Florida Supreme Court, preferring finality over a plain reading of the statutory language, placed a restrictive construction upon the statute based upon federal case law which has since been abrogated.
I am of the view that a plausible argument can be made that, in those limited circumstances in which a particular appellate district court has been given exclusive review powers over a certain class of cases, that court should be empowered to share with the Florida Supreme Court the right to overrule even the supreme court's established precedential authority to the contrary, subject of course to further review by the supreme court. If this court were so empowered, any such action undertaken by it would not affect the jurisdictional power of the Florida Supreme Court to review any decision of the District Court of Appeal "that expressly and directly conflicts with a decision ... of the supreme court on the same question of law." Art. V, § 3(b)(3), Fla. Const. The supreme court's power of review would thus remain unimpaired, as would its power to finally determine the issue.
Although there is no express constitutional prohibition of this court's right to overrule controlling precedent of the Florida Supreme Court, I recognize that the supreme court has disapproved a district court's right to so act. In Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), the court observed that if a district court of appeal were so allowed to proceed, chaos and uncertainty at the trial level would result while review proceedings were pending before the Florida Supreme Court. The preferred *978 course, the court continued, in cases in which a district court found fault with the supreme court's controlling precedent, was for the district court to state or argue its reasons for advocating change and to certify the question to the Florida Supreme Court as one of great public importance, but such court is nonetheless bound to follow the established case law of the supreme court. Id. at 434.
Nevertheless, in situations where, as here, a district court of appeal is accorded exclusive appellate jurisdiction over a particular class of cases, the chaos alluded to by the court in Hoffman would not in my judgment necessarily ensue from an appellate court decision that deliberately departs from established case law of the Florida Supreme Court. First, it would be unlikely that any such decision would conflict with any decision of another district court of appeal. Second, a district court's utilization of the stay provisions of Florida Rule of Appellate Procedure 9.310 would to a large extent allay any confusion at the trial level pending review of the appellate court's decision by the supreme court. Consequently, if our decision had the effect of directing payment of compensation benefits, and our mandate were stayed pending review of any such decision by the Florida Supreme Court, the carrier's responsibility to pay such benefits would be similarly stayed.
The option suggested in Hoffman  that a district court which disagrees with an earlier decision of the Florida Supreme Court follow controlling precedent and certify the question to that court as one of great public importance  is inapplicable to the present case. This is because, in our collective judgment, no precedential authority has issued from the supreme court precluding a judge of compensation claims from modifying an earlier compensation order on the ground of mistake of fact in those exceptional circumstances where there is an admitted total lack of evidence to support a denial of the claim. Moreover, certifying a question to the supreme court regarding whether the parallel language in our act should be construed in a manner identical to that employed in the federal sector would not be feasible, because we have not passed on the question that would be appropriate for certification. See Revitz v. Baya, 355 So.2d 1170 (Fla. 1977).
Therefore, under the circumstances, any meaningful attempt to place a construction on the pertinent language of section 440.28, consistent with the plain meaning of the statute, must await future resolution by the Florida Supreme Court if a case arises in which, unlike the present case, some evidence exists supporting an earlier compensation order.

ON MOTION FOR REHEARING
Appellees have filed a motion for rehearing and clarification addressed to the court's opinion filed June 29, 1990. Among other things, appellees point out an apparent error in the following statement in that opinion:
Although the deputy commissioner stated in that order that "the stress which the claimant testified to over a long period of time was not to an extent greater than that to which the general public is exposed" (R. 407), the order makes no reference to the testimony of plaintiff's expert witness Pappas; the quoted statement was apparently based on the deputy commissioner's belief that periods of extraordinary stress are normal in everyday life, and that the level of stress described by claimant cannot, as a matter of law, serve as the legal basis for a workers' compensation claim. Yet it is abundantly clear that there is no evidence in the record to support that statement of fact. This is confirmed by the deputy commissioner's comments during the modification hearing, especially his statement that he was aware his conclusion that claimant's stress is no greater than that to which the general public is exposed has no evidentiary support.
(Emphasis added.) We acknowledge that this last sentence does not accurately reflect *979 the record in this case and should be clarified.
The deputy commissioner's statements referred to above were actually made during a hearing held March 5, 1984, on the claimant's motion to vacate or amend the deputy commissioner's previously entered order dated February 17, 1984, denying his claim. (R. 439). This hearing occurred before the first appeal was taken in this case. However, at the hearing on the motion for modification held March 24, 1986, after this court's decision on that first appeal, the claimant's attorney referred to this statement or concession by the deputy commissioner and expressly relied on it to support the motion for modification. (R. 9). The importance of all this lies not in the fact that the deputy commissioner's statement was made before the first appeal, as now urged by appellees, but that the deputy commissioner's statement was relied on to support the motion for modification, and the latter was the intended import of the questioned sentence in our opinion. This clarification does not, therefore, alter the premise for our opinion nor require a different result.
With the foregoing clarification, we adhere to our decision holding that the deputy commissioner was presented with a legally sufficient motion for modification pursuant to section 440.28 based on a mistake in the determination of fact, and that this court's decision on the prior appeal was likewise predicated upon an erroneous factual premise that should not continue to control the rights of the parties. The motion for rehearing is in all other respects denied.
SHIVERS, C.J., and ERVIN and ZEHMER, JJ., concur.
NOTES
[1] The deputy commissioner's order stated:

From the stipulations, and from the testimony and evidence presented at the hearing; the undersigned makes the following findings:
1. That the Deputy Commissioner has jurisdiction over the subject matter and of the parties hereto and that venue was properly set in Alachua County, Florida.
2. That all reports and documents submitted by the claimant including the reports of Doctors Mouat, Rottman and Vaughen are admitted into evidence.
3. That the letter document offered by the Employer/Carrier is admitted into evidence for the sole purpose of verifying that the claimant had just over four years of service with the Employer.
4. I find that the claimant reached maximum medical improvement with a condition of permanent total disability as a result of multiple sclerosis on July 20, 1983. I base this finding on the medical reports of Dr. Mouat. I make no finding as to when he gave notice to his employer.
5. I find that the claimant is currently permanently totally disabled due to the effects of multiple sclerosis, an organic condition. I base this finding on the testimony of Doctors Mouat and Rottman.
6. The claimant testified that immediately upon commencing his duties as Director of Engineering for WUFT-TV-FM in July 1979, he was required to work long hours, often ten to twelve hours per day, for as many as six or seven days a week. This condition continued from the commencement of his duties through October of 1980, when the WUFT-TV transmitting tower satellite dish and micro-transmitters were destroyed in an airplane crash. In order to meet that emergency, the claimant's hours increased to as many as eighteen hours per day, with this condition lasting for one to two months, before the claimant was able to shorten his hours. These hours were necessitated not only by the emergency created when the tower was destroyed, but also due to the move of WUFT-TV from the station building to Weimer Hall on the University of Florida campus. It was noted that the station was also undergoing extensive expansion during this period which also required the acquisition of a considerable amount of new equipment. During this entire period of time, the Engineering Division was plagued by unusually high turnover, which was in the neighborhood of 86% during the Claimant's first year. The claimant testified that during the first year or two of his employment with the University, he was pressured by the FM Station Manager to purchase equipment for the FM station in a manner that would not comply with the Florida statutory and regulatory requirements. He testified that this caused him considerable pressure as he was the individual directly responsible and accountable for purchasing of broadcast equipment for WUFT-TV-FM during this period of time. Partially as a result of the above-described conflict, the claimant's job descriptions underwent revisions, beginning in early 1981. It was not until approximately August of 1982 that the revision process was completed and during much of the intervening period two job descriptions continued to be in existence, both of which concerned the position of Director of Engineering. This testimony was corroborated by the claimant's witnesses and was not contradicted by the Employer/Carrier.
7. The claimant also testified that he suffered his most severe attack of disability from multiple sclerosis in April of 1980; that he went to bed one night and the next day when he got up he could not get out of bed, could not control his right leg or right arm, and as a result of that attack stayed in bed for two days. He slowly started regaining the use of his arm and leg and returned to work. He testified that no unusual or sudden event occurred on or before the day of that attack.
8. The claimant also testified that he suffered several additional but less severe exacerbations of his multiple sclerosis in November of 1980, but again did not relate those attacks to any unusual or sudden event at work.
9. The claimant testified that he was never in pain, that in the summer and fall of 1981, his condition worsened, he had several more attacks that lasted two or three days, his balance was bad and he would just fall down. As a result, he had to reduce his work load and continued to work but on a substantially lighter schedule cutting down to as little as two to three hours a day and even less until on the first Friday of July 1983, when he could no longer function and resigned his position.
10. I find that the claimant's multiple sclerosis condition pre-existed his employment with the University of Florida. The medical testimony reveals that multiple sclerosis is a progressive, non-curable, debilitating disease. Its cause is unknown. The testimony further indicates that stress can accelerate or exacerbate multiple sclerosis, however, I find that the stress which the claimant testified to over a long period of time was not to an extent greater than that to which the general public is exposed, was not an exposure peculiar to and constituting a hazard of his employment operating upon the physical condition of the claimant. The claimant must to have been subject to more that [sic] the ordinary hazards confronting people generally. Job pressure and long hours of work in and of itself have never been held to be factors which result in entitlements under the Workers' Compensation Act. Indeed, if job pressure and stress were compensable, there would be no end to compensable claims under the Act, as in today's world, all gainful activities are subject to the disease! Unlike Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA 1980), the claimant was not subjected to repeated trauma. Stress while it may exacerbate multiple sclerosis, or for that matter many other organic diseases, is in the nature of a psychological trauma and is not compensable. See Polk Nursery Company, Inc. v. Reilly, 433 So.2d 1233 (Fla. 1st DCA 1983). I therefore find that the claimant has not suffered a compensable accident and that his permanent total disability is not covered under the Workers' Compensation Act.
(R. 404-408).
[2] The deputy commissioner's candor in this regard is to be commended, not condemned. It is not the purpose of this opinion to discourage such candor by deputy commissioners; rather, such practice should be encouraged.
[3] Our prior decision was eminently correct in treating this issue of causation in the aggravation of the preexisting multiple sclerosis condition as one of fact rather than one of law. 1 A. Larson, The Law of Workmen's Compensation § 12.25 (1989).
[4] The test applied in the case before us involves the aggravation of a pre-existing condition based on repeated exposures under the decision in Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA), pet. for rev. denied, 388 So.2d 1119 (Fla. 1980). Therefore, it is not to be confused with the proof requirements in heart attack cases under the doctrine of Victor Wine & Liquor, Inc., v. Beasley, 141 So.2d 581 (Fla. 1962).
[5] The first Florida Supreme Court decision to construe the mistake of fact amendment is Sonny Boy's Fruit Co. v. Compton, 46 So.2d 17 (Fla. 1950), but that opinion discusses the statute without a single reference to any case construing and applying similar language.
[6] See, e.g., Beaty v. M & S Maintenance Co., 124 So.2d 868 (Fla. 1960). In his dissent, Justice Drew explained that it was clear from the record that the deputy had misunderstood and misinterpreted the evidence in the first hearing with reference to a vital factor, that this became abundantly manifest at the modification hearing, and that the deputy admitted his mistake of fact was based upon an erroneous assumption. Justice Drew concluded that this was exactly the type of situation contemplated by the provision in section 440.28: "The purpose of the modification provision would surely be thwarted if a deputy commissioner is to be prevented by a strained construction of the law from correcting an obvious injustice on clear and convincing evidence within the period the statute provides for such purpose." 124 So.2d at 870-71. There was, however, contradictory evidence on the factual issue involved.
[7] We note that the doctrine of res judicata, although normally applicable in workers' compensation proceedings, will not be applied where it will work an injustice. Flesche v. Interstate Warehouse, 411 So.2d 919, 924 (Fla. 1st DCA 1982).