In the Matter of the Compensation of
Russell Carter, Claimant.

## STATE ACCIDENT INSURANCE FUND CORPORATION,
*Petitioner,*

*v.*

## CARTER,
*Respondent.*

(81-05764; CA A31320)

698 P2d 1037

Donna Parton Garaventa, Assistant Attorney General, Salem, argued the cause for petitioner. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Michael Haines, Salem, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

SAIF petitions for review of a Workers' Compensation Board order requiring SAIF to accept an exacerbation of claimant's multiple sclerosis (MS) condition as compensable. We affirm.

Claimant works for the Field Services Division of the Workers' Compensation Department. In 1980 and 1981, he was a supervisor in the Portland area. He has had MS since 1974 and has been a patient of Dr. Swank since 1975. He had several exacerbations of the disease in 1976 and 1977 but was essentially stable from then until February, 1981. Early in 1981, the Portland newspapers reported allegations that claimant, a State Senator and the head of the Workers' Compensation Department had received favors from a vendor of rehabilitation services; the implication was that claimant had sent injured workers to the vendor's program for improper reasons. The allegations led to grand jury and Ethics Commission investigations. Those investigations took up much of claimant's time during the first half of 1981 and subjected him to considerable stress. The charges also received a large amount of publicity, increasing claimant's stress. Even before the allegations surfaced, claimant had worked 10-hour days and frequent weekends; his perfectionism caused problems between him and those he supervised.

■ Claimant's MS began to be exacerbated in February, 1981, producing numbness in his arms, hands and legs. At the time of the hearing he had improved but continued to have residual numbness in his left hand and right fingertips and pain in his upper thighs. The weight of the testimony is that an exacerbation of MS leaves one or more lesions along neural pathways, resulting in a permanent neurological deficit, and that a patient will never recover to the pre-exacerbation condition. Although exacerbations are to be expected in the course of the disease, each produces a worsening of the underlying condition as defined in *Weller v. Union Carbide*, 288 Or 27, 602 P2d 259 (1979). A particular exacerbation is therefore compensable if it is caused by something related to the patient's work. The issue here is whether claimant's 1981 exacerbation was causally connected to his work-related stress.

We have dealt with the effect of stress on MS

exacerbations, and with Swank's position as an expert, twice previously. In *Abbott v. SAIF,* 45 Or App 657, 609 P2d 396 (1980), we found that the claimant, who was also a patient of Swank, had shown that stress had exacerbated her MS. Although three neurologists testified to the contrary, and although it was a close case, we found Swank's opinion that stress was the cause was more persuasive, because he was the treating physician and because he had more expertise in treating MS than did the other neurologists. In *Giesbrecht v. SAIF,* 58 Or App 218, 648 P2d 70 (1982), we found that the claimant had not shown that heat caused an exacerbation of his MS. Four physicians had testified that it did not, but the referee had accepted Swank's opinion that it did because we had found Swank persuasive in *Abbott v. SAIF, supra.* As we pointed out in *Giesbrecht,* our decision on the value of a particular expert's testimony can only be a decision for the particular case. Each case must stand on its own. "[T]he contribution of one expert's opinion to the preponderance of evidence in one case has no bearing on the relative weight of the same expert's opinion in another case with a different mix of medicial opinions." 58 Or App at 219.

Again in this case, Swank's position on MS is disputed by other neurologists, and again we must evaluate his position in the context of a specific claim and a specific record.[1] Swank is the former head of the Neurology Department of the University of Oregon Medical School (now Oregon Health Sciences University). Although he retired from

---

[1] One difficulty we have in this case comes from the nature of the testimony, particularly from the limited cross-examination of the medical witnesses. All of the physicians referred, in general terms, to studies, published and unpublished, which supported or illustrated their testimony. However, counsel did not ask the physicians to refer to studies by title, name of author or journal and date of publication, nor did counsel on cross-examination ask them to comment on specific publications which might contradict or cast doubt on their testimony. No relevant studies were placed in the record. Counsel made little attempt to test the methodology of the studies which were discussed. The issue we must decide is primarily whether stress *can* cause an exacerbation of MS. That is a question of scientific knowledge. In answering it, empirical data, explained by knowledgeable experts, would be more valuable than the opinion of a treating or examining physician. Testimony based on research, and sophisticated probing of that testimony by reference to specific research findings and methodologies, is more important in deciding this kind of question than are unsupported opinions of physicians, however detailed or clearly stated. In the absence of such testimony we are left to pick and choose among the experts, relying on their apparent credentials and the persuasiveness of their presentations. We are unable to determine as well as we would wish what scientific authority is behind the experts' opinions or to compare those opinions to research results.

that position when he reached the mandatory retirement age, he continues an active medical practice, limited to the treatment of MS. He has conducted long-term studies on groups of MS patients, including one group that he has followed for over 30 years. In his opinion, which he first developed in the 1940's, MS is the result of an excessively high level of blood fat; the heart of his treatment, therefore, is a low fat diet. He also previously used whole blood transfusions and presently uses plasma infusions during an exacerbation.

Swank appears to be almost alone in the profession in his view of the cause of the disease. The other neurologists who testified stated that the cause of MS is unknown but that the best theories are that it is either the result of a slow virus or of an auto-immune response. The only available treatment for an exacerbation, they testified, is palliative, except that steroids appear to help clear up vision problems. In part because of their view that there is no effective treatment, the other neurologists have relatively few MS patients, while Swank has 800 or 1000 at any one time. Although Dr. Watson did not believe that Swank's treatment can arrest the disease, he considers Swank's program excellent palliative care and encourages his MS patients who ask about it to go to Swank.

The evidence is similarly divided on whether stress can cause MS to exacerbate. In a letter, Dr. Stolzberg questioned whether stress is definable or objectively measurable and stated that claimant's exacerbation was not related to his work. In his testimony, Dr. Snodgrass denied that stress can cause an exacerbation. He pointed to a study showing no greater MS incidence in soldiers exposed to combat than in soldiers who never saw action.[2] Watson questioned how a mental condition such as stress could have a physical effect on nerve pathways. He recognized that some studies show a relationship between *physical* stress and MS exacerbations. Swank stated unequivocally that stress can cause exacerbations and that it in fact caused claimant's. He relied partly on the opinions of other neurologists and partly on a study he

---

[2] Snodgrass did not mention the source of this study. He spent a number of years working in veteran's hospitals early in his career, and he may have learned of the study during that work. Neither he nor any other expert who testified claimed to have done a thorough search of the relevant medical literature or to be presenting the results of such a search at the hearing.

conducted of 12 divorcing women. The study showed that 10 of the 12 women experienced exacerbations in the course of their divorces and that the two who did not were the only ones who were independently secure financially.

All of the objective evidence in this case is flawed. The study of veterans is not in the record, and we cannot evaluate it beyond Snodgrass' summary. The expert opinions on which Swank relied are apparently all several decades old. He apparently made no attempt to evaluate the degree of stress the divorcing women he studied had experienced in any objective fashion or to compare them to a control group.[3] Watson, although denying that mental stress could play a role, accepted physical stress as a possible contributor.[4] All the physicians recommended rest for a patient during an exacerbation, which indicates some feeling that a reduction in stress might be helpful.

■   The question of whether mental stress can cause MS exacerbation is, on this record, close.[5] Swank seems to be opposed to the generality of the profession on the cause of MS, but he also has had far more experience with the disease than has any of the other witnesses. His experience with the disease gives his opinion on the relationship between mental stress and exacerbations considerable weight. We find, on the evidence before us, that it is more probable than not that mental stress can cause MS to exacerbate. That being the case, we accept the opinion of Swank, claimant's treating physician, and find it more probable than not that claimant's work-related stress caused his 1981 exacerbation. His claim as to that exacerbation is compensable.[6]

Affirmed.

---

[3] We say "apparently," because the cross-examination did not probe into Swank's study in any depth.

[4] Stolzberg's denial of the existence of mental stress gives his opinion little value in this context.

[5] It is also, of course, a medical, rather than a legal, question. However, the answer is relevant to claimant's claim, and we must therefore resolve it for the purposes of this case on the record before us. We necessarily do so without prejudice to future medical developments or to previous medical developments of which we have not been made aware and which may be presented in a future case.

[6] We do not, by this ruling, express any opinion as to the compensability of future exacerbations, if they occur.