602 So.2d 516 (1992)
UNIVERSITY OF FLORIDA, et al., Petitioners,
v.
Emmett H. MASSIE, Respondent.
No. 76414.
Supreme Court of Florida.
May 28, 1992.
Rehearing Denied August 17, 1992.
*517 David A. McCranie of McConnaughhay, Roland, Maida, Cherr & McCranie, Jacksonville, for petitioners.
Terence J. Kann, Jacksonville, for respondent.
H. George Kagan of Miller, Kagan & Chait, P.A., Deerfield Beach, amicus curiae for Florida Employers Service Corp.
Harold E. Regan, Tallahassee, amicus curiae for Academy of Florida Trial Lawyers.
McDONALD, Justice.
The University of Florida and the Division of Risk Management petition this Court to review Massie v. University of Florida, 570 So.2d 963 (Fla. 1st DCA 1990), in which the First District Court of Appeal reversed the deputy commissioner's denial of Massie's application for modification of a previously entered order denying him workers' compensation. The district court held that the deputy commissioner erred by not allowing modification pursuant to section 440.28, Florida Statutes (1985), because of "a complete absence of evidence to support the finding of fact in the prior order." Id. at 977. The district court also held that its prior decision approving the deputy commissioner's denial of compensation resulted in manifest injustice which justified an exception to the law of the case *518 doctrine. We find conflict with Power v. Joseph G. Moretti, Inc., 120 So.2d 443 (Fla. 1960), and Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1961).[1] For the reasons expressed below, we quash the decision of the district court and direct that the order of the deputy commissioner denying modification be reinstated.
The deputy commissioner wrote the following in his original order dated February 17, 1984:
6. The claimant testified that immediately upon commencing his duties as Director of Engineering for WUFT-TV-FM in July 1979, he was required to work long hours, often ten to twelve hours per day, for as many as six or seven days a week. This condition continued from the commencement of his duties through October of 1980, when the WUFT-TV transmitting tower satellite dish and microtransmitters were destroyed in an airplane crash. In order to meet that emergency, the claimant's hours increased to as many as eighteen hours per day, with this condition lasting for one or two months, before the claimant was able to shorten his hours. These hours were necessitated not only by the emergency created when the tower was destroyed, but also due to the move of WUFT-TV from the station building to Weimer Hall on the University of Florida campus. It was noted that the station was also undergoing extensive expansion during this period which also required the acquisition of a considerable amount of new equipment. During this entire period of time, the Engineering Division was plagued by unusually high turnover, which was in the neighborhood of 86% during the Claimant's first year. The claimant testified that during the first year or two of his employment with the University, he was pressured by the FM Station Manager to purchase equipment for the FM station in a manner that would not comply with the Florida statutory and regulatory requirements. He testified that this caused him considerable pressure as he was the individual directly responsible and accountable for purchasing of broadcast equipment for WUFT-TV-FM during this period of time. Partially as a result of the abovedescribed conflict, the claimant's job descriptions underwent revisions, beginning in early 1981. It was not until approximately August of 1982 that the revision process was completed and during much of the intervening period two job descriptions continued to be in existence, both of which concerned the position of Director of Engineering. This testimony was corroborated by the claimant's witnesses and was not contradicted by the Employer/Carrier.
7. The claimant also testified that he suffered his most severe attack of disability from multiple sclerosis in April of 1980; that he went to bed one night and the next day when he got up he could not get out of bed, could not control his right leg or right arm, and as a result of that attack stayed in bed for two days. He slowly started regaining the use of his arm and leg and returned to work. He testified that no unusual or sudden event occurred on or before the day of that attack.
8. The claimant also testified that he suffered several additional but less severe exacerbations of his multiple sclerosis in November of 1980, but again did not relate those attacks to any unusual or sudden events at work.
9. The claimant testified that he was never in pain, that in the summer and fall of 1981, his condition worsened, he had several more attacks that lasted two or three days, his balance was bad and he would just fall down. As a result, he had to reduce his work load and continued to work but on a substantially lighter schedule cutting down to as little as two to three hours a day and even less until on the first Friday of July 1983, when he could no longer function and resigned his position.
10. I find that the claimant's multiple sclerosis condition pre-existed his employment with the University of Florida. *519 The medical testimony reveals that multiple sclerosis is a progressive, non-curable debilitating disease. Its cause is unknown. The testimony further indicates that stress can accelerate or exacerbate multiple sclerosis, however, I find that the stress which the claimant testified to over a long period of time was not to an extent greater than that to which the general public is exposed, was not an exposure peculiar to and constituting a hazard of his employment operating upon the physical condition of the claimant. The claimant must have been subject to more that the ordinary hazards confronting people generally. Job pressure and long hours of work in and of itself have never been held to be factors which result in entitlements under the Workers' Compensation Act. Indeed, if job pressure and stress were compensable, there would be no end to compensable claims under the Act, as in today's world, all gainful activities are subject to the disease. Unlike Festa v. Teleflex, Inc., 382 So.2d 122 [122] (Fla. 1st DCA 1980), the claimant was not subjected to repeated trauma. Stress while it may exacerbate multiple sclerosis, or for that matter many other organic diseases, is in the nature of psychological trauma and is not compensable. See Polk Nursery Company, Inc. v. Reilly [Riley], 433 So.2d 1233 (Fla. 1st DCA 1983). I therefore find that the claimant has not suffered a compensable accident and that his permanent total disability is not covered under the Workers' Compensation Act.
On February 23, 1984, Massie filed a motion to vacate and set aside, or to amend, the deputy commissioner's order. At the hearing on the motion, Massie asserted that the deputy commissioner's earlier finding, that Massie's stress was no greater than that to which the general public is exposed, was without evidentiary support. The following exchange took place on the record:
MR. KANN [Massie's counsel]: I'm going to file an appeal, Judge. I would like the order to go up, if it has to go up on appeal, with the accurate findings of fact specifically on that stress. I haven't heard, uh, addressed at all, uh, by Mr. Clayton and my point is there was no conflicting evidence on that. That man had a pressure packed stressful job. Everybody that came here told the Court he did, yet the findings in the Court order were that it wasn't.
THE COMMISSIONER: Just present the facts. I just don't think that the situation fits the, uh, philosophy of Workers' Compensation.
MR. KANN: Well, understanding the Court's position on that situation, I am 
THE COMMISSIONER: Now, I got reversed in Ross, but, uh, I didn't agree with the reversal.
MR. KANN: Judge, the order has this language  I find that the stress which the claimant testified to, uh, over a long period of time was not to an extent greater than that which the general public is exposed. There's no support for that finding.
THE COMMISSIONER: I know there's no support for it, but that's what I found. I don't, uh, listen. If I, you don't think that this is a stressful situation, sitting here?
The deputy commissioner denied Massie's motion by order dated March 9, 1984. The First District Court of Appeal affirmed the deputy commissioner, finding that "because there was expert testimony that Massie's stress was not `unusual' and that job stress causes `everyone' to have difficulty, we must hold that the deputy's holding was supported by competent substantial evidence." Massie v. University of Florida, 463 So.2d 383, 384 (Fla. 1st DCA), review denied, 472 So.2d 1181 (Fla. 1985) [hereafter Massie I]. In reaching this decision the district court noted that stress is an emotional condition which is difficult to qualify and that prior cases had dealt with physical hazards.
On August 22, 1985, Massie filed a request for modification of the deputy commissioner's prior order, pursuant to section *520 440.28, Florida Statutes (1985),[2] alleging a change in his condition or a mistake in the deputy commissioner's determination of facts. At the hearing on the request for modification, Massie admitted that there had been no change in his condition. However, Massie's job placement expert, Alan Pappas, testified that his testimony at the original hearing had been taken out of context by the district court, that he had not testified that Massie's stress was not unusual, that Massie's stress at work was unusual, and that on a scale of one to ten, Massie's stress would rate "eight or nine." The deputy commissioner denied the request for modification by order dated April 30, 1986, and, finding that the request was filed without reasonable grounds, taxed the costs of the proceedings against Massie.
On June 29, 1990, the district court issued Massie v. University of Florida, 570 So.2d 963 (Fla. 1st DCA 1990) [hereafter Massie II].[3] The court found that Massie had sustained a compensable accident and held that the deputy commissioner had correctly denied modification based upon a change in Massie's condition. However, the court also held that "the deputy commissioner had the authority, and indeed the duty on this record, to recognize his mistake in a determination of fact and to consider the modification sought by appellant," id. at 973, despite the prior decision affirming the original order. In the alternative, even if the deputy commissioner was without authority to modify his original order after the district court's affirmance, the district court held that it could "correct its own mistake of law and fact to avoid manifest injustice," id. at 974, because its "duty in reviewing workers' compensation cases to administer justice under the law, outweighs its duty to follow an earlier decision of the court in the same case when, due to an error in reviewing the evidence, doing so will result in manifest injustice to a party." Id. at 975.
Finding that it was confronted with a clear instance of manifest injustice, the district court reviewed Pappas's testimony and reached the following conclusions:
The deputy commissioner has never rejected the expert testimony and opinion of Alan Pappas as being incredible or untrue. Neither the original order of February 1984 denying compensability nor the order denying modification explicitly refers to any facts supporting the deputy commissioner's general conclusion that the mental and physical stress and strain in claimant's job was not greater than that to which the general public is subjected. Rather, the deputy conceded at the modification hearing that the record contained no such evidence. Nor did either contain any explicit finding that claimant's working 12 to 18 hours a day did not impose unusual physical exertion on claimant greater than that imposed on the general public, or that physical exertion due to these long hours, acting in concert with the mental stress shown by claimant's evidence, did *521 not contribute to the aggravation of claimant's preexisting condition of multiple sclerosis. Only this court's appellate opinion explicates, by an incorrect reference to Pappas's testimony, factual support for the deputy commissioner's general conclusion that claimant was not subjected to unusual stress.
Id. at 976. The court then applied an exception to the law of the case doctrine and reversed the deputy commissioner. On rehearing, the court acknowledged that the deputy commissioner's statement conceding lack of evidentiary support was made at the March 5, 1984, hearing on Massie's motion to vacate or amend the original order, which took place before the original appeal, rather than at the hearing on the request for modification, which occurred after the original appeal. In all other respects, the court denied rehearing.
We must answer two questions in resolving this case. First, do the circumstances of Massie's case constitute an "accident" for purposes of workers compensation? Second, can a district court, under the circumstances of this case, reverse its prior decision sustaining the deputy commissioner's denial of compensability?
Section 440.02(1), Florida Statutes (1989),[4] defines "accident" as follows:
"Accident" means only an unexpected or unusual event or result, happening suddenly. A mental or nervous injury due to fright or excitement only, or disability or death due to the accidental acceleration or aggravation of a venereal disease or of a disease due to the habitual use of alcohol or narcotic drugs, shall be deemed not to be an injury by accident arising out of the employment. Where a preexisting disease or anomaly is accelerated or aggravated by an accident arising out of and in the course of employment, only acceleration of death or acceleration or aggravation of the preexisting condition reasonably attributable to the accident shall be compensable, with respect to death or permanent impairment.
This Court has clarified this definition in various cases dealing with different types of workers' compensation claims. Most analogous to the case currently before us are the "heart attack" cases, those where an employee has been injured as a result of some physical failure not due to any external force or agency in the workplace and not due to an occupational disease. Typically, these cases have involved heart attacks and the aggravation of pre-existing cardiovascular disease.
In Victor Wine this Court adopted the following rule for heart attack cases:
When disabling heart attacks are involved and where such heart conditions are precipitated by work-connected exertion affecting a pre-existing non-disabling heart disease, said injuries are compensable only if the employee was at the time subject to unusual strain or overexertion not routine to the type of work he was accustomed to performing.
Thus, if there is competent substantial medical testimony, consistent with logic and reason, that the strain and exertion of a specifically identified effort, over and above the routine of the job, combined with a pre-existing non-disabling heart disease to produce death or disability sooner than it would otherwise have occurred from the normal progression of the disease, the employee has a right to some compensation.
141 So.2d at 588-89. This test clearly requires the occurrence of some physical strain or exertion.
This Court clarified the Victor Wine rule and extended it to other internal failures of the cardiovascular system in Richard E. Mosca & Co., Inc. v. Mosca, 362 So.2d 1340 (Fla. 1978). Mosca suffered a ruptured congenital cerebral aneurysm at the end of a stressful business meeting and at a time when he was having business problems which caused him tension and pressure. We concluded that Mosca failed to meet the test of Victor Wine and stated:

*522 We have had a number of "heart" cases in which we determined what was or what was not an unusual and non-routine strain or exertion within the definition of Victor Wine. These decisions have involved either physical strain or exertion alone or physical strain or exertion in concert with emotional strain, but in no case have we held emotional strain alone to be sufficient. Emotional strain is too elusive a factor to be utilized, independent of any physical activity, in determining whether there is a causal connection between a heart attack or other internal failure of the cardiovascular system and the claimant's employment.
362 So.2d at 1342. We have not deviated from that principle since.
In Tintera v. Armour & Co., 362 So.2d 1344 (Fla. 1978), released the same day as Mosca, this Court agreed with the Industrial Relations Commission's denial of coverage to a claimant who had suffered a heart attack due to stress. We quoted with approval the following findings of the commission:
"Taken in the light most favorable to the claimant, the evidence shows that claimant's stress was caused by a combination of the following factors: claimant's participation in the regular monthly inventory, heavy traffic and a minor automobile accident on the Interstate, reprimands from the manager, claimant's divorce, apprehension that his employer was trying to get rid of him and he was going to lose his job. While we recognize the stressful nature of these episodes, they do not meet the test of Victor Wine, supra."
362 So.2d at 1346.
During the same year, this Court decided Richards Department Store v. Donin, 365 So.2d 385 (Fla. 1978), in which Donin asserted that a myocardial infarction, his second in four years, was "precipitated by a series of unusual, non-routine, work-related, emotionally traumatic events and circumstances compressed within a specific period of time, rather than a single isolated event." Id. at 386. Donin had experienced a substantial increase in his work duties and hours and had lost his assistant. We held the heart attack not compensable and stated:
We find, consistent with our pronouncement in Victor Wine and its progeny, that, for a heart attack occurring during the course of employment to be compensable, it must have been caused by the unusual strain or overexertion of a specifically identifiable effort not routine to the work the employee was accustomed to performing.
In determining whether a particular activity is not routine, we must look to the duty performed by the employee himself rather than by his fellow workers. Yates v. Gabrio Electric Co., 167 So.2d 565 (Fla. 1964).
... .
Since the judge did not find that the strain and exertion of a specifically identified effort, over and above the routine of the job caused the heart attack and since, from the record, we do not find that such occurred, we grant the petition for writ of certiorari and quash the order of the Industrial Relations Commission with directions that it quash the order of the Judge of Industrial Claims and dismiss the claim.
365 So.2d at 386-87.
In City of Miami v. Rosenberg, 396 So.2d 163 (Fla. 1981), we again found a heart attack not compensable. Rosenberg, who had a history of heart disease, experienced stress at his job due to pressure from his superiors to retire. He was transferred to different duties, was eventually assigned no duties, and was forced to endure a confrontational atmosphere. The judge of industrial claims denied compensation, finding that "the unusual stress and over-exertion occurred over a period of six months and is not related to a `specifically identifiable event.'" Id. at 164. The Industrial Relations Commission found that Rosenberg had moved some heavy boxes during the week before his heart attack; consequently, it reversed. This Court reversed the commission and stated:
Contrary to the commission's statement, there was no evidence that claimant had *523 moved the boxes in the week immediately preceding his heart attack. Instead claimant testified that he had moved the boxes some time during the six months prior to having his heart attack.
Second, there is no medical testimony linking claimant's heart attack to any physical activity. The medical evidence merely established a link between claimant's heart attack and his psychological and emotional stress... . Since the Judge of Industrial Claims was correct in finding no evidence that the heart attack was caused by a specifically identifiable event, the commission departed from the essential requirements of law in reversing his order.
Id. at 165.
This Court has allowed compensation in situations where unusual physical exertion is accompanied by psychological stress. In Silvera v. Miami Wholesale Grocery, Inc., 400 So.2d 439 (Fla. 1981), we considered "whether Silvera's heart attack was `caused by the unusual strain or overexertion of a specifically identifiable effort not routine to the work the employee was accustomed to performing.'" Id. at 440 (quoting Richards Department Store, 365 So.2d at 386). We found that it was because physical exertion was present in addition to emotional stress. We stated:
The issue posed by these facts is whether Richards requires a precise correlation between physical effort and the onset of a heart injury, and whether an "effort" encompasses a combined physical and emotional sequence which is identifiable apart from normal work pressures. We hold that it does not require a precise temporal correlation, and that the specifically identifiable effort may be a causally related emotional and physical sequence which is independent of normal work pressures.
To be compensable, the `identifiable effort' associated with the onset of a heart attack must be job-related and must stem in part from some non-routine physical exertion. It may, however, involve psychological pressures closely associated with the physical activity.
Id. at 441.
In the past, the First District Court of Appeal has correctly followed our holdings in the aforementioned cases. In Hammersmith, Inc. v. Zanfardino, 425 So.2d 80 (Fla. 1st DCA 1982), review denied, 436 So.2d 101 (Fla. 1983), the district court denied compensability where a claimant died as a result of a ruptured aorta, which medical testimony showed was related to a polygraph examination administered to the claimant during an investigation of pilferage, and stated:
While being wired for and taking a polygraph test might be characterized as non-routine, the evidence clearly showed that there was nothing in the test which could be described as a physical overexertion.... Emotional strain unaccompanied by unusual physical strain or overexertion is an insufficient basis upon which to predicate compensability.
Id. at 81. The First District Court of Appeal has applied this principle to other types of internal failures as well. See Wolbert, Saxon & Middleton v. Warren, 444 So.2d 511 (Fla. 1st DCA 1984) (denying compensability where claimant's severe asthma attacks were brought on by emotional trauma after she discovered some alleged discrepancies and irregularities in her employer's trust account); Polk Nursery Co. v. Riley, 433 So.2d 1233 (Fla. 1st DCA 1983) (denying compensation to claimants who experienced physical symptoms of poisoning because of agitation due to their incorrect belief that they had been poisoned on the job).
In both Massie I and Massie II the district court relied upon its decision in Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA), review denied, 388 So.2d 1119 (Fla. 1980). In Festa the district court observed that cases in Florida involving exposure to deleterious substances usually resulted in the awarding of compensation, while those involving injuries resulting from repeated trauma usually resulted in the denial of compensation. The court sought to "bring together and clarify the exposure rationale," *524 id. at 123, and set forth the following test:
In summary, for a claimant to recover under the exposure theory of accident, he must show 1) prolonged exposure, 2) the cumulative effect of which is injury or aggravation of a pre-existing condition and 3) that he has been subjected to a hazard greater than that to which the general public is exposed. Alternatively, he must demonstrate a series of occurrences, the cumulative effect of which is injury. These same theories should be applied in cases involving injuries resulting from repeated trauma.
Id. at 124 (citation omitted).
In Festa the district court included in its discussion of exposure cases the seminal heart attack case, Victor Wine. However, there is clearly a difference between cases involving a pre-existing heart condition and an exposure case like Worden v. Pratt & Whitney Aircraft, 256 So.2d 209 (Fla. 1971), where the claimant developed cataracts from looking into a high intensity furnace over a period of several years, a form of exposure or repeated trauma.[5] Thus, although the district court may have fashioned a standard for dealing with exposure cases and repeated trauma cases, it did not go far enough because it did not provide for the additional requirements set forth in Victor Wine and its progeny.
Care must be taken in analyzing exposure cases where the deleterious substance or condition caused the injury and those where the deleterious substance or condition exacerbated an existing defect. For example, Czepial v. Krohne Roofing Co., 93 So.2d 84 (Fla. 1957), which the Festa court included in its discussion of exposure cases, involved a claimant whose continuous inhalation of dust and fumes at work exacerbated his pre-existing tuberculosis. Such a case is obviously different from exposure cases like Worden and Alexander Orr, Jr., Inc. v. Florida Industrial Commission, 129 Fla. 369, 176 So. 172 (1937), where a death by sunstroke was caused by job-related excessive heat.
Thus, we are faced with the problem of how to treat cases where a pre-existing defect is exacerbated by work conditions. In the heart attack cases, a pre-existing condition may be exacerbated by some physical over-exertion, which may or may not be accompanied by psychological stress, and in cases like Czepial, the pre-existing condition may be aggravated by some deleterious substance or condition in the workplace. However, in both types of cases, some physical stimulus causes a pre-existing condition to become worse. Consequently, an additional requirement should be added to the First District Court of Appeal's test enunciated in Festa. Quite simply, the additional requirement should be that which we set forth years ago in Victor Wine and in the cases which followed it. In order for a pre-existing condition to be compensable, it must be exacerbated by some nonroutine, job-related physical exertion, or by some form of repeated physical trauma. This may or may not involve psychological pressures closely related to the physical activity. In the case of exposure which exacerbates a pre-existing condition, or causes a new injury, that exposure must be of a physical nature, be it some deleterious substance or extreme environmental condition.
We acknowledge that psychological pressures often have negative physical results. For example, in the case now before us the stress of long hours and mounting job responsibilities could take a physical toll. However, such stresses are neither a physical cause nor an accident under our workers' compensation law. They are also not uncharacteristic of the stresses which all managers must occasionally face, as the deputy commissioner noted in his order. We are not willing to redefine workers' *525 compensation coverage to include situations where psychological causes may have physical effects. The legislature is the appropriate body to take such action.
In Massie II the district court failed to consider that the deputy commissioner could have properly ignored any testimony concerning psychological stress because, as a matter of law, such stress is not properly considered in the context of workers' compensation unless it accompanies some nonroutine, job-related physical exertion or repeated physical trauma. Pappas' testimony characterized stress as being of a psychological and physical nature, but no witness ever testified to an incident of nonroutine physical exertion, exposure to some deleterious substance or extreme environmental condition, or repeated physical trauma. As there was no such testimony, the deputy commissioner's factual determination was not improper.
Having determined that the deputy commissioner did not err in determining that Massie's claim was not compensable, we now address the First District Court of Appeal's reversal of Massie I by Massie II. We choose not to address the district court's lengthy discussion of the tension between the finality of decisions and the discretion of deputy commissioners to correct mistakes of fact because the deputy commissioner properly found no mistake of fact. In Massie II the district court states that the deputy commissioner conceded "the complete absence of competent evidence to support the alleged mistake of fact," id. at 973, but actually his comments at the hearing on Massie's motion to vacate seem merely to acknowledge the irrelevance of the extent of Massie's stress. The deputy commissioner therefore had no duty to consider Massie's later request for modification based upon this prior "concession" because he determined there had been no mistake of a material fact.
We acknowledge that a deputy commissioner may modify a workers' compensation order upon a showing of mistake of fact, regardless of whether an appellate court has affirmed the original order. We note that there is no indication in this record that the deputy commissioner felt compelled by the district court's affirmance to deny Massie's request for modification. We also acknowledge that, in rare instances, a court may correct its own erroneous prior decision to prevent manifest injustice. However, in the instant case, the First District Court of Appeal did not have adequate reasons to reconsider Massie I. It simply re-reviewed the record and erroneously changed its conclusion. This is what we proscribed in Power v. Joseph G. Moretti, Inc. The district court itself properly stated its review standards in Stinson v. Stroh's Brewing Co., 540 So.2d 893, 894 (Fla. 1st DCA), review denied, 547 So.2d 1211 (Fla. 1989):
In this case, as is true in almost every other similar competent substantial evidence case, there are some conflicts in the evidence and some evidence that would support a finding that the claim is compensable, but as this court has said many, many times, that is not the issue before the court on appeal. The proper issue is whether there is any competent substantial evidence to support the deputy's order.
In the instant case, there was competent substantial evidence to support the deputy commissioner's findings that Massie was not subjected to repeated physical trauma and that his stress was in the nature of psychological trauma, which is not compensable. Dr. David Mouat, a neurologist who examined and treated Massie, gave the following testimony during his deposition:
Q. Now with respect to Mr. Massie's job and his job-related situation we're of course dealing with the workers compensation law of the State of Florida and I assume from the questions that Mr. Kann has asked and the answers that you've given that you do not in any way attribute his disease to what is commonly known as an occupational disease under the workers' compensation law.
A. Not in any way that I'm aware in terms of industrial and toxic exposure, physical injury occurring on the job or any relationship of that sort. In fact the diagnosis I believe was offered originally *526 several years prior to Mr. Massie coming to Gainesville.
... .
The frequent use of the term stress in medicine is normally associated not with easily objective measured things such as number of hours spent on the job, number of papers written, things of this sort, but conflicts between an individual's efforts and their productivity. Perhaps best saying it as in the sense that someone is on a treadmill and that they're getting further behind all the time.
The genesis of those conflicts is highly individual and I don't think could be identified with one particular job necessarily more so than another, although certain jobs such as an air traffic controller are classically associated with a higher risk of what are called stress related diseases, including coronary artery disease, ulcer and the like.
... .
A. If you don't mind let me make one comment and that is medical definitions of stress require some perception that the individual has significant conflicts within the work environment that may be of any of several varieties.
It might be of some value to consider expert testimony  medical testimony in this regard, in terms of psychological evaluation because I seem to be hearing repetitively questions of stress and its relationship, which was the basic gist of my letter. That again is based on stress as being conflicts within the job rather than numerically the number of hours or the basic tasks of the job itself.

(Emphasis added.) In addition, the district court itself in Massie I acknowledged that "[i]t is difficult to qualify stress, an emotional condition." 463 So.2d at 384 (emphasis added). Clearly, the district court's finding in Massie II that the deputy commissioner's findings were unsupported by competent substantial evidence was erroneous.
In revisiting Massie I, the district court in Massie II placed great significance upon the deputy commissioner's comments at the hearing on the motion to vacate. As we have already stated, those comments do not have the significance urged by the district court when one considers that the level of stress experienced by Massie was irrelevant as a matter of law. While it is true that the district court incorrectly characterized Pappas's testimony in Massie I, it is also true that Pappas's testimony concerning the level of Massie's stress was irrelevant and that Pappas's testimony that Massie's stress was physical as well as psychological was equivocal and refuted by Dr. Mouat. Therefore, the district court had no basis for substituting its factual findings for that of the deputy commissioner and holding that Massie I resulted in manifest injustice.
We believe that Massie II is based upon the view that workers' compensation should be awarded when a claimant's pre-existing physical defect is exacerbated by job-related stress. Whether or not we agree with that view, we find that it is contrary to the existing workers' compensation statute and it would be improper for the courts to so amend that statute. Recently, in Leon County School Board v. Grimes, 548 So.2d 205 (Fla. 1989), we reviewed another attempt by the First District Court of Appeal to broaden the purpose of workers' compensation and concluded that by adopting the district court's view "we would be amending the purpose of chapter 440 to allow compensation to injured employees without regard to whether industry brought about the injury." Id. at 208. We refused to engage in such judicial legislation then, and we refuse to do so now. As we stated in Grimes: "We find that the legislature, which established this means of compensation, is the proper branch to broaden the purpose of chapter 440." Id.
In conclusion, while we are sympathetic to Massie's situation, we hold that he is not entitled to workers' compensation for the exacerbation of his multiple sclerosis under the circumstances of this case. We therefore quash the decision of the First District Court of Appeal and remand with directions *527 that the deputy commissioner's order denying modification be affirmed.[6]
It is so ordered.
OVERTON, GRIMES and HARDING, JJ., concur.
SHAW, C.J., dissents with an opinion, in which BARKETT and KOGAN, JJ., concur.
SHAW, Chief Justice, dissenting.
The question presented in this case is whether manifest injustice occurred such as to support the decision of the district court. I believe it did; I would therefore approve the district court.
The majority's first error is in attempting to apply the test of compensability employed in heart attack cases  a type of case universally recognized as unique, and an exception to the general rule of compensability in workers' compensation cases. I see no reason to apply the test developed in heart attack cases to employment-exacerbated multiple sclerosis which manifests itself in an unusual event, happening suddenly.
The second error in the majority's reasoning occurs in the transmuting of the "physical strain" requirement, Mosca, 362 So.2d at 1342, into a requirement that "some physical stimulus cause[] a pre-existing condition to become worse," majority opinion at 17, a requirement that exists neither in our former cases nor in the language of the statute.[7] If an "additional requirement," id., for compensation is to be imposed, it must be imposed by the legislature, not this Court. Just as "the legislature, which established this means of compensation, is the proper branch to broaden the purpose of chapter 440," Grimes, 548 So.2d at 208, so too is it the proper branch to narrow the purpose of the act.
As noted by Professor Larson, despite preexisting disease, injury arising out of employment is compensated from workers' compensation. See 1 Arthur Larson, The Law of Workmen's Compensation § 12.21 (1990).
Preexisting disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought. This is sometimes expressed by saying that the employer takes the employee as he finds him.
Id. at 3-381  3-433 (footnotes omitted).
Since the rule of law stated [above] is so widely accepted, in practice most of the problems in this area are medical rather than legal. Indeed, it is medical controversy that chiefly accounts for the large number of cases in this category [weakness aggravated by employment].
Id. § 12.24, at 3-452  3-453 (footnote omitted).
I agree with the appellate court in Oregon that the exacerbation of an employee's multiple sclerosis is compensable when it is "causally connected to his work-related stress." State Accident Ins. Fund Corp. v. Carter, 73 Or. App. 416, 698 P.2d 1037, 1038 (1985). See also Abbott v. State Accident Ins. Fund, 45 Or. App. 657, 609 P.2d 396 (1980) (compensation award upheld where stressful employment exacerbated *528 multiple sclerosis). I also agree that the question whether mental stress can cause the exacerbation of multiple sclerosis is "of course, a medical, rather than a legal, question," and, therefore, any decision to award compensation must necessarily be rendered "without prejudice to future medical developments or to previous medical developments of which we have not been made aware and which may be presented in a future case." Carter, 698 P.2d at 1040 n. 5. The majority opinion, by announcing a rule of law relative to multiple sclerosis, arrogates to the legal realm questions that are essentially medical questions and invites future contradiction from science.
As this Court said in Protectu Awning Shutter Co. v. Cline, 154 Fla. 30, 31-32, 16 So.2d 342, 343 (1944) (affirming an award to one subject to fainting spells):
The purpose of the [Workers' Compensation] act is to shoulder on industry the expense incident to the hazards of industry; to lift from the public the burden to support those incapacitated by industry and to ultimately pass on to the consumers of the products of industry such expense... .
... The [act] is based primarily on social responsibility of one to another. It surely cannot be said that its benefits should be extended in a less degree to those less fortunate than the average worker.
And as the Court said in Mobile Elevator Co. v. White, 39 So.2d 799, 800 (Fla. 1949), if the worker is "hurt while [engaged in the employer's activity], then the employer who benefits or profits from that activity must relieve society of the consequences of a broken body, a diminished income, an outlay for medical and other care."
The majority opinion violates both the plain language and the purpose of the act. For these reasons I dissent.
BARKETT and KOGAN, JJ., concur.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
[2] This section reads as follows:

440.28 Modification of orders.  Upon a deputy commissioner's own initiative, or upon the application of any party in interest, on the ground of a change in condition or because of a mistake in a determination of fact, the deputy commissioner may, at any time prior to 2 years after the date of the last payment of compensation pursuant to any compensation order, or at any time prior to 2 years after the date copies of an order rejecting a claim are mailed to the parties at the last known address of each, review a compensation case in accordance with the procedure prescribed in respect of claims in s. 440.25 and, in accordance with such section, issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation or award compensation. Such new order shall not affect any compensation previously paid, except that an award increasing the compensation rate may be made effective from the date of the injury, and, if any part of the compensation due or to become due is unpaid, an award decreasing the compensation rate may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such method as may be determined by the deputy commissioner.
[3] On June 2, 1988, the district court issued Massie v. University of Florida, no. BN-98 (Fla. 1st DCA June 2, 1988), in which it reversed the order of the deputy commissioner. However, the court withdrew this opinion two weeks later.
[4] This subsection was numbered 440.02(18) in 1981, when Massie's employment with the University of Florida terminated.
[5] As the district court has recognized, repeated trauma cases are exposure cases: "In Keller Building Products of St. Petersburg v. Shirley, IRC Order 2-3263, cert. denied 362 So.2d 1054 (Fla. 1978), the IRC resolved this disparate treatment by classifying repeated trauma as a facet of exposure, thereby bringing repeated trauma cases within the ambit of the exposure rationale." Festa v. Teleflex, Inc., 382 So.2d 122, 123 (Fla. 1st DCA), review denied, 388 So.2d 1119 (Fla. 1980).
[6] With regard to Judge Ervin's concurring opinion, we continue to adhere to the views expressed in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).
[7] The statute requires: "an injury arising out of and in the course of employment." § 440.09(1), Fla. Stat. (1989). "Injury" means an "accident [which is defined as an "unusual event or result, happening suddenly"] arising out of and in the course of employment." § 440.02(1), (16), Fla. Stat. (1989) (emphasis added). Here Mr. Massie, after continued extraordinarily long hours (up to eighteen hours per day, six to seven days per week, continuing for months), combined with a supervisor-initiated request to perform illegal acts, went to bed one night and awoke unable to "control his right leg or right arm"; "he could not get out of bed." At 517-518. Waking up unable to move certainly is an unusual result, happening suddenly. Expert medical testimony exists in the record, provided by Dr. Mouat, opining that the exacerbation of Mr. Massie's preexisting disease arises out of his employment. The legislatively-created conditions for compensation have been met. In view of the long hours Mr. Massie was required to work for months, the court-created condition of "physical strain" also has been met.