636 So.2d 8 (1994)
Warren ZUNDELL, Petitioner,
v.
DADE COUNTY SCHOOL BOARD, et al., Respondents.
No. 81057.
Supreme Court of Florida.
March 10, 1994.
Rehearing Denied May 16, 1994.
*9 Steven M. Dunn of Dunn & Johnson, P.A., Miami, for petitioner.
Sylvia A. Krainin of Kelley, Kronenberg, Kelley, Gilmartin & Fichtel, P.A., Miami Lakes, for respondents.
Cecilia F. Renn, General Counsel and Julie E. Douthit, Tallahassee, amicus curiae for Dept. of Labor and Employment Sec. Div. of Workers' Compensation.
Richard A. Barnett of Barnett & Hammer, P.A., Hollywood, amicus curiae for The Academy of Florida Trial Lawyers.
KOGAN, Justice.
We have for review the following question certified to be of great public importance:
WHETHER AN EMPLOYER IS REQUIRED TO PROVE THE EXISTENCE OF A PREEXISTING CONDITION IN COMPENSATION CASES INVOLVING HEART ATTACKS AND INTERNAL FAILURES OF THE CARDIOVASCULAR SYSTEM AS A PREREQUISITE TO THE APPLICATION OF THE TEST FOR COMPENSABILITY ESTABLISHED IN VICTOR WINE & LIQUOR, INC., V. BEASLEY[[1]] AND RICHARD E. MOSCA & CO., INC., V. MOSCA[[2]]?
Zundell v. Dade County School Bd., 609 So.2d 1367, 1371 (Fla. 1st DCA 1992). We rephrase the question as follows:
Whether the rule announced in Victor Wine & Liquor, Inc., v. Beasley, 141 So.2d 581 (Fla. 1962), ever can apply to cardiovascular injuries occurring on the job when competent substantial medical evidence shows no evidence of a preexisting condition relevant to the injury?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Warren Zundell was an algebra teacher at Hialeah Junior High. On January 5, 1988, *10 while dealing with a disruptive student, Zundell suffered a hemorrhage of the brain that later resulted in his retirement. The injury occurred following a series of problems with the student. The student was being unruly and was chewing a large wad of gum. When Zundell ordered the student to remove the gum, the student hurled the wad "like a baseball into the waste can" and then began screaming very loudly, "The gum is gone." Afterward, Zundell was forced to take the student twice to the school office for discipline  the second time after the student had attempted to return to class without apparent authorization.
After the second trip to the office, Zundell began feeling ill. He was unable to move his arms or stand up. Then he began vomiting and experiencing an intense headache. A rescue unit had to be summoned, and Zundell immediately was taken to a hospital. He later was diagnosed with the hemorrhage.
Medical evidence showed no preexisting condition that might explain the injury, although an expert also noted that such evidence sometimes is elusive. In any event, no other evidence existed to refute the medical finding of a lack of a preexisting condition. The expert did indicate that Zundell's hemorrhage most probably was caused by an elevation in blood pressure precipitated by the encounter with the student.
Zundell sought workers' compensation benefits for the incident, but the judge of compensation claims denied the petition. As grounds, the compensation judge relied on the standard announced in Victor Wine. On appeal, a divided First District Court of Appeal sitting en banc affirmed but certified the question. Zundell, 609 So.2d at 1371.
The rule of law announced in Victor Wine was intended to deal with the peculiar problem that arises when a worker's compensation claimant suffers a cardiovascular injury on the job that appears at least partly to have been caused by a preexisting medical condition. Under Victor Wine, a claimant whose injury may have been exacerbated by such a condition may be unable to recover without first showing that the injury occurred during a job-related exertion over and above normal working conditions.[3]Victor Wine, 141 So.2d at 588-89.
The Victor Wine rule rests on the policy that employers should not be held responsible for the preexisting condition and injuries that may normally flow from it. Put another way, Victor Wine is a means of determining when and how the cost of the injury will be apportioned so that employers only are liable for what is reasonably attributable to workplace conditions.
The exact method by which Victor Wine achieves this division has been criticized as placing an unfair burden on the claimant. E.g., Zundell, 609 So.2d at 1373 (Webster, J., dissenting in part, concurring in part). However, we need not and therefore do not revisit the soundness of that analysis or its exact contours today, because the present case does not involve a preexisting condition and therefore does not implicate Victor Wine in the first instance. As Judge Webster correctly noted in dissent below, this Court has never extended Victor Wine to encompass cases in which the evidence showed a lack of any preexisting condition. Id. at 1372 (citing cases). District court cases that appear to have done so to that degree have improperly extended Victor Wine to issues it was not intended to address.[4]
*11 Absent sufficient evidence of a preexisting condition, cases involving alleged workplace cardiovascular injuries generally should be analyzed like any other workplace injury. Such injuries often may be essentially no different, for example, than a hernia brought on by routine workplace exertion, in the absence of a preexisting condition. As Judge Ervin noted below, we clearly have allowed compensation for hernias in that situation. Id. at 1382 (Ervin, J., dissenting) (citing Duff Hotel Co. v. Ficara, 150 Fla. 442, 7 So.2d 790 (1942)).
The facts of the present case show that Zundell encountered in the workplace a situation involving some level of actual exertion  correcting a severely disruptive student  even though this exertion was within the parameters of routine job performance; and the medical evidence indicates within a reasonable degree of medical probability that this exertion resulted in the cardiovascular injury he suffered and that there was no other ascertainable cause. For present purposes, these facts essentially are indistinguishable from a workplace exertion resulting in a hernia.
Moreover, we believe it would be inherently unfair to deny compensation here, when Zundell's injury so clearly arose from a situation inherent in the workplace, which Zundell normally would not have encountered in his non-work life. The entire policy of worker's compensation is to ensure that workers are swiftly and fairly compensated for work-related injuries. Worker's compensation was not intended to erect arcane rules that would deny employees compensation for injuries clearly arising from workplace conditions.
We are aware that cases sometimes say that job-related stress alone may not be sufficient to permit compensation in certain cases. E.g., University of Florida v. Massie, 602 So.2d 516, 526 (Fla. 1992). While that may be true based on the facts of specific cases,[5]see id., it is not always so, as other cases clearly show. For example, there is a distinction between stress itself and a workplace exertion, whether or not the latter is stressful. If an exertion has resulted in injury within a reasonable degree of medical probability, then compensation is permissible even if the exertion itself also has resulted in or been associated with some degree of stress. We believe this must be true in light of the fact that even purely psychic injury may be compensable if actually caused by physical trauma arising from work conditions, however slight. See City of Holmes Beach v. Grace, 598 So.2d 71 (Fla. 1992).
Moreover, the relevant statute states:
"Accident" means only an unexpected or unusual event or result, happening suddenly. A mental or nervous injury due to fright or excitement only ... shall be deemed not to be an injury by accident arising out of the employment. Where a preexisting disease or anomaly is accelerated or aggravated by an accident arising out of and in the course of employment, only acceleration of death or acceleration or aggravation of the preexisting condition reasonably attributable to the accident shall be compensable, with respect to death or permanent impairment.
§ 440.02(1), Fla. Stat. (1987) (emphasis added). This statutory language clearly reflects a fundamental policy, first, to compensate for all injuries arising out of work except purely psychic injuries caused only by stress, fright, or excitement. Second, the policy also is to compensate for the aggravation or acceleration of preexisting conditions, but only to the extent that workplace conditions are the cause.[6] Zundell's claim thus is compensable because it was a physical injury arising from a workplace exertion and was not attributable to any ascertainable preexisting condition.
Thus, in cases of this type, claimants will be entitled to recover by introducing evidence that the injury was work-related under traditional worker's compensation principles even though the injury might not have been *12 brought on by any unusual exertion. As a general rule, it will be sufficient merely to present a physician's statement that no preexisting condition was medically detectable.
We do believe, however, that claimants must bear the initial burden of showing that no relevant preexisting condition existed or at least that none can be medically detected, if the injury was of a type that could be exacerbated by a preexisting condition.[7] Judge Ervin argued in his dissent below that the burden should be placed on the employer, on grounds that a preexisting condition in effect is an affirmative defense that should be pled by the one raising it. Zundell, 609 So.2d at 1384 (Ervin, J., dissenting). We believe sound policy dictates against this approach.
Workers' compensation is an administrative remedy designed to speed an employee's compensation while insulating both employer and employee from the costs and delays inherent in purely judicial adversarial proceedings. Proceedings obviously will be speeded if the burden is placed on the claimant, whose health after all is the real issue in dispute. Claimants, in other words, must first show entitlement by submitting to appropriate medical examination. This process will help leave worker's compensation dockets unburdened by spurious claims while speeding compensation for sound claims. Moreover, requiring a claimant to produce the necessary medical evidence will lessen the desire of some employers to engage in the more intrusive practice of pretesting workers for preexisting conditions, to the extent permitted by law.
Once evidence is produced showing the absence of a preexisting condition, the burden then shifts to the employer to demonstrate the existence of a preexisting condition. When the compensation judge determines that no such condition exists, the case then should be decided without reference to the Victor Wine rule. The compensation judge's determination of this factual issue will not be revisited on appeal when supported by competent substantial evidence. Massie, 602 So.2d at 525 (quoting Stinson v. Stroh's Brewing Co., 540 So.2d 893, 894 (Fla. 1st DCA), review denied, 547 So.2d 1211 (Fla. 1989)).
These principles obviously were not followed here. Therefore, the decision below is quashed and this case is remanded for further proceedings consistent with our views here. We answer the rephrased question in the negative.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
NOTES
[1] 141 So.2d 581 (Fla. 1962).
[2] 362 So.2d 1340 (Fla. 1978).
[3] Our opinion in Richard E. Mosca & Co. v. Mosca, 362 So.2d 1340 (Fla. 1978), extended the rule to preexisting conditions contributing to internal failures of the cardiovascular system in general. We also have extended the rule to include some other preexisting conditions, such as multiple sclerosis. University of Florida v. Massie, 602 So.2d 516 (Fla. 1992).
[4] It is impossible to list all cases that could be read as extending Victor Wine in this manner, because many simply fail to mention anything about a preexisting condition. We cannot determine whether such cases were improperly analyzed or simply failed to mention the fact that a preexisting condition actually existed. All such cases therefore should be considered disapproved solely to the extent they are inconsistent with our views here, including the following specifically cited by the court below: City of Opa Locka v. Quinlan, 451 So.2d 965 (Fla. 1st DCA 1984); Diaz v. City of Miami, 427 So.2d 1085 (Fla. 1st DCA 1983); Hodgen v. Burnup & Sims Engineering, 420 So.2d 885 (Fla. 1st DCA 1982).
[5] University of Florida v. Massie, 602 So.2d 516, 526 (Fla. 1992), for example, involved a serious preexisting condition, multiple sclerosis. That fact alone distinguishes it from the instant case.
[6] There obviously are other statutory exceptions not relevant here.
[7] It may be that some injuries could not possibly be exacerbated by a preexisting condition. If so, compensation judges should not require expert proof of this fact.