KAHN, Judge.
The judge of compensation claims (JCC) found appellee Chester Cole’s heart attack to have been suffered in the scope and course of his employment with appellant. Because the JCC failed to apply the well-established test of legal causation, we reverse.
Claimant, Chester Cole, is a 47-year-old man who, at the time of his heart attack, had been employed since 1988 by the Department of Business Regulation, Division of Hotels and Restaurants, as a sanitation safety administrator. His job duties included coordinating and attending administrative hearings concerning individuals and businesses charged with violation of Florida Statutes and rules governing hotels and restaurants. Cole had chronic ischemic heart disease of long-standing duration. Approximately two weeks before June 5, 1992, Cole experienced increased chest discomfort, shortness of breath and a burning sensation in this left arm. On June 4, 1992, he participated in a chapter 120 administrative hearing involving the owner of a restaurant known as the Spaghetti House. Cole appeared at the administrative hearing with attorney Tracy Moye, who was the Division’s legal representative. The hearing began at around 8:30 or 9:00 in the morning and continued until 5 p.m. Because the hearing had not been completed by 5 p.m., the hearing officer asked to reconvene the next day, which would be Friday, June 5,1992.
On Friday Mr. Cole came in to work at the usual time, but did not concern himself with the Spaghetti House hearing until around 11 a.m. He went to lunch with attorney Moye and several other Division employees. At lunch Cole and the others discussed strategy with regard to the hearing, which was scheduled to reconvene that afternoon at 3 or 3:30 p.m.
The owner of the Spaghetti House was a very contentious individual who was not represented by counsel at the hearing. During the hearing the owner was verbally abusive toward Cole. At 5 p.m. the hearing had not concluded. Cole testified that he had never on any occasion worked past 5 p.m. Prior to June 5, 1992, Cole had always left work in time to arrive home where he relaxed and had dinner with his wife at 6 p.m. daily. On June 5, however, the participants in the hearing decided to continue through without a dinner break until conclusion. Around 8 p.m., Mr. Cole began to feel ill. At 9:30 he asked attorney Moye if he could be allowed to go home. Cole signed out at 9:30 p.m. and went home. During the night, his wife took him to an emergency room where his condition was diagnosed as anterior wall myocardial infarction.
The JCC made the following findings:
16. It is clear to me that it is unrefuted that the claimant’s work day leading up to his heart attack was non-routine and arduous. Although the State of Florida has introduced evidence regarding the claimant’s job description, there is no dispute that it was non-routine for the claimant to be working into the evening hours without having an opportunity to break for dinner. Based upon the testimony of the witnesses, as well as my experience in presiding over hearings, I have no doubt that the claimant’s activity in attending the hearing into the evening hours was both physically and mentally demanding....
[C]onsidering the overwhelming medical testimony that the claimant’s acute myocardial infarction was precipitated or triggered by the arduous work day, and considering the non-routine physical and mental demands of the work day, it is my opinion that the claimant’s heart attack is consistent with the parameters for com-pensable heart attacks set forth in Mosca and Victor Wine. Although the Supreme Court’s recent decision in Massie alludes to the fact that long working hours alone are not sufficient to qualify as non-routine *293 physical activity, the facts in Massie appear to be distinguishable from this case. In Massie, the claimant had suffered from a long standing disease of multiple sclerosis (this distinction was noted in Zundell). Further, in Massie, there was a lack of medical testimony regarding causation (in this ease there is ample medical testimony through the deposition testimony of Dr. van den Berg and Dr. Weaver regarding causation). Further, in Massie, the claimant’s long working hours had been going on for some time and may be considered to be routine, while Mr. Cole’s long work day on June 5,1992 was the first and only time he had worked that late and also included the additional factor of not breaking for dinner.
17. Having found that the claimant has sustained a compensable heart attack, I reject the defenses as raised by the employer that the claimant’s heart attaek was noncompensable and did not arise out of and in the course and scope of employment. Specifically, I find that the claimant’s work day was sufficiently non-routine and physically demanding to meet the test for compensability under Florida Workers’ Compensation Law.
The question before us is whether Mr. Cole’s heart attack is compensable under the case law noted by the JCC.
In Florida, heart attacks and other internal failures are compensable “only if the employee was at the time subject to unusual strain or over-exertion not routine to the type of work he was accustomed to performing.” Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581, 589 (Fla.1961) (on rehearing granted). Industry is not required to compensate an employee for a heart attack “ ‘unless it is shown that an identifiable effort over and above that routine for the job produced a strain and exertion that combined with the pre-existing non-disabling heart disease to produce death or disability sooner than it would otherwise have occurred from the normal progression of the disease.’” Tintera v. Armour & Co., 362 So.2d 1344, 1346 (Fla.1978). “[A]bsent proof of some identifiable effort on the job which within reasonable medical probability can be said to have a causal connection to the collapse, there arises serious doubt that the collapse was either accidental or causally related to the employment.” McCall v. Dick Burns, Inc., 408 So.2d 787, 790 (Fla. 1st DCA 1982).
The case law since Victor Wine has established that the exertion requirement enunciated in that ease signifies actual physical exertion. Florida law requires a showing of either physical strain or exertion alone, or physical strain or exertion in concert with emotional strain, but in no event is emotional strain sufficient. Richard E. Mosca & Co., Inc. v. Mosca, 362 So.2d 1340, 1342 (Fla. 1978). Emotional strain, independent of any physical activity, “is too elusive a factor to be utilized.... ” Id. The test of legal causation requires the claimant to demonstrate a “specifically identifiable effort not routine to the work the employee was accustomed to performing.” Richards Dept. Store v. Donin, 365 So.2d 385, 386 (Fla.1978). Job related stress unaccompanied by nonroutine physical effort will not support recovery. See State of Florida Real Estate Commission v. Felix, 383 So.2d 941 (Fla. 1st DCA 1980) (attorney’s schedule requiring travel to 15 cities for 20 depositions within a two-week period insufficient to meet the Victor Wine “exertion” requirement); Hammersmith, Inc. v. Zanfardino, 425 So.2d 80 (Fla. 1st DCA 1982) (aneurysm suffered during polygraph examination not compensable despite finding by deputy commissioner that being wired to a polygraph machine was an “identifiable effort” leading to physical reaction in the claimant); City of Opa Locka v. Quinlan, 451 So.2d 965, 966-967 (Fla. 1st DCA 1984) (police officer who worked longer hours doing his own work as well as administrative work of other officers out on sick leave and who, contrary to his usual practice, “chewed out” several other officers publicly, just before suffering a heart attack, did not meet the burden of showing “nonroutine physical” effort at work which resulted in his heart attack); see also, University of Florida v. Massie, 602 So.2d 516, 524 (Fla.1992) (“In order for a pre-existing condition to be com-pensable, it must be exacerbated by some nonroutine, job-related physical exertion, or by some form of repeated physical trauma.”).
On the day in question, Cole had essentially worked three hours beyond his normal *294 quitting time when he began to experience pain and shortness of breath. He remained on the job another hour and a half before leaving. Mr. Cole did work overtime on the day in question and worked through what would have normally been his dinner hour. These long hours and the apparently stressful work environment do not, however, satisfy the requirement of a specifically identifiable physical exertion. Although “the stress of long hours and mounting job responsibilities could take a physical toll ..., such stresses are neither a physical cause nor an accident under our workers’ compensation law.” Massie, 602 So.2d at 524 (emphasis in original).
We have carefully reviewed the testimony of Dr. van den Berg, claimant’s cardiologist. According to Dr. van den Berg, Cole found himself under unusual and enormous stress during the hearing. Cole worked straight through, longer than he normally would, and was unable to discontinue his activities. According to Dr. van den Berg, the stress of the meeting as described by Mr. Cole, combined with Mr. Cole’s responsibilities, “could certainly reasonably play a role in precipitating this ... heart attack.” Nevertheless, nothing in Dr. van den Berg’s testimony points to an identifiable physical exertion as the precipitating event. Similarly, nothing in claimant’s own testimony supports a finding of an identifiable physical exertion. Although the JCC found as a fact that the day in question confronted claimant with work that was both “nonroutine and arduous,” this does not satisfy the requirements of the case law. Were we to hold that sitting in an administrative hearing for three to four hours beyond normal quitting time constituted a physical exertion as that term is used in the case law, we would basically obliterate the legal cause test in favor of a medical causation test. “The legislature is the appropriate body to take such action.” Massie, 602 So.2d at 525.
REVERSED.
BARFIELD and ALLEN, JJ., concur.